**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| NOFAR USA LLC,<br><br>Plaintiff,<br>v.<br><br>BAREND VENTER, VENTER VENTURES LLC, BLUE SKY 1007 LLC, and THE VENTER FAMILY REVOCABLE TRUST,<br><br>Defendants. | Case No. 1:24-cv-00870-JLH |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(2) AND 12(b)(6) OR, IN THE ALTERNATIVE, FOR A STAY**

Michael Cypers (*pro hac vice*)
Joseph Leventhal (*pro hac vice*)
Wogai Mohmand (*pro hac vice*)
Glaser Weil Fink Howard Jordan & Shapiro LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, CA 90067
(310) 553-3000
mcypers@glaserweil.com
jleventhal@glaserweil.com
wmohmand@glaserweil.com

Laura Davis Jones (DE Bar No. 2436)
Peter J. Keane (DE Bar No. 5503)
Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
(302) 652-4100
ljones@pszjlaw.com
pkeane@pszjlaw.com

Dated: November 8, 2024

Attorneys for Defendants
Barend Venter, Venter Ventures LLC, Blue Sky 1007 LLC, and The Venter Family Revocable Trust

## TABLE OF CONTENTS

Page


I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 2

III. LEGAL STANDARD ..... 3

A. Motion to Dismiss For Lack of Jurisdiction ..... 3

B. Motion to Dismiss Under Rule 12(b)(6) ..... 3

C. Pleading Fraud Under Rule 9(b) ..... 3

D. Motion to Stay ..... 3

IV. ARGUMENT ..... 4

A. The Court Lacks Pers/onal Jurisdiction Over Certain Defendants. ..... 4

1. Delaware's long-arm statute does not grant personal jurisdiction. ..... 4

2. The Court does not have general jurisdiction over these defendants ..... 5

3. The Court does not have specific jurisdiction over these defendants. ..... 6

B. The Tort Claims Allege Nothing More Than a Breach of Contract. ..... 7

1. The tort claims fail to allege any independent duty. ..... 7

2. The fraud claims seek the same damages as the contract claim. ..... 9

C. The Fraud Claims Fail to Meet Rule 9(b)'s Pleading Standards. ..... 10

D. The Indemnification Breach of Contract Claim Fails Because the FAC Does Not Allege Any Misrepresentations Under the MIPA. ..... 11

1. There are no financial models as part of the contract. ..... 11

2. The FAC inadequately alleges misrepresentations of subscription rates. ..... 12

3. "True and complete copies" of financial statements were provided ..... 13

4. The MIPA disclosed indebtedness to Bright Power Inc. ..... 14

E. The Indemnification Contract Claim Fails Against Most Defendants ..... 15

F. The Implied Covenant of Good Faith and Fair Dealing Is Improperly Pled. ..... 16

G. The Confidential Information Breach of Contract Claim Fails Because No Confidential Information Was Disclosed ..... 17

H. In The Alternative, This Action Should be Stayed. ..... 18

1. The status of the litigation favors a stay. ..... 19

2. A stay would simplify the issues at trial. ..... 19

3. A stay would not unduly prejudice plaintiff. ..... 19

V. Conclusion ..... 20

## TABLE OF AUTHORITIES

Page

### CASES

*Anotek, LLC v. Venture Exch., SCS*,
No. CV-N19C-04-211 JRJ, 2021 WL 2577604 (Del. Super. Ct. June 22, 2021)............... 5

*Apotex, Inc. v. Senju Pharmaceutical Co. Ltd.*,
921 F. Supp. 2d 308 (D. Del. 2013)........................................................................ 4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................ 3

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................ 3

*Berg Chilling Systems, Inc. v. Hull Corp.*,
435 F.3d 455 (3rd Cir. 2006) .................................................................................. 6

*Bookwalter v. UPMC*,
946 F.3d 162 (3d Cir. 2019)............................................................................. 3, 10

*Celorio v. On Demand Books LLC*,
201 WL 4506411 (D. Del. Aug. 21, 2013) ........................................................... 19

*Deloitte Consulting LLP v. Sagitec Solutions LLC*,
692 F. Supp. 3d 421 (D. Del. 2023)........................................................................ 3

*Frederico v. Home Depot*,
507 F.3d 188 (3d Cir. 2007)................................................................................. 10

*ImageVision.Net, Inc. v. Internet Payment Exchange, Inc.*,
2013 WL 663535 (D. Del. Feb. 25, 2013) ............................................................ 19

*ITW Glob. Invs. Inc. v. Am. Indus. Partners Cap. Fund IV, L.P.*,
No. CAN14C10236JRJCCLD, 2015 WL 3970908, (Del. Super. Ct. June 24, 2015).... 7, 9

*Kuroda v. SPJS Holdings, L.L.C.*,
971 A.2d 872 (2009).............................................................................................. 17

*O'Connor v. Sandy Lane Hotel Co., Ltd.*,
496 F.3d 312 (3rd Cir. 2007) .............................................................................. 5, 6

*Peschke Map Technologies, LLC v. J.J. Gumberg Co.*,
40 F. Supp. 3d 393 (D. Del. 2014)........................................................................... 4

*Toshiba Samsung Storage Technology Korea Corporation v. LG Electronics, Inc.*,
193 F. Supp. 3d 345 (D. Del. 2016)...................................................................... 20

*Town of Cheswold v. Cent. Delaware Bus. Park*,
188 A.3d 810 (Del. 2018) ...................................................................................... 12

*Trifecta Multimedia Holdings Inc. v. WCG Clinical Servs. LLC*,
318 A.3d 450 (Del. Ch. 2024)................................................................................... 9

*Tygon Peak Cap. Mgmt., LLC v. Mobile Invs. Investco, LLC*,
No. CV 2019-0847-MTZ, 2022 WL 34688 (Del. Ch. Jan. 4, 2022) ................................ 16

*VLIW Technology, LLC v. Hewlett-Packard Co.*,
840 A.2d 606 (2003).............................................................................................. 18

*Yankees Entertainment and Sports Network, LLC v. Hartford Fire Insurance Company*,
634 F. Supp. 3d 203 (D. Del. 2022)................................................................... 3, 6

## FEDERAL CASES

10 Del. C. § 3104(c) ........ 4

## STATE CASES

FED. R. CIV. PROC., Rule 12(b)(2) ........ 3, 4
FED. R. CIV. PROC., Rule 12(c) ........ 19
FED. R. CIV. PROC., Rule 9 ........ 3
FED. R. CIV. PROC., Rule 9(b) ........ 1

## I. INTRODUCTION

This case is about a publicly-traded corporation attempting to wrestle total control of a company founded by Defendant Barend Venter ("Mr. Venter"). Plaintiff Nofar USA LLC ("Nofar USA"), Mr. Venter, Defendant Blue Sky 1007 LLC ("Blue Sky 1007"), and others entered into two Membership Interest Purchase Agreements (collectively, "MIPA")—for Blue Sky Utility LLC and for Blue Sky Utility Holdings LLC (collectively, "Blue Sky" or the "company"). As a result, Nofar USA was to own only 67% of the company. But Nofar USA, through its parent, O.Y. Nofar Energy Ltd. ("O.Y. Nofar"), failed to live up to its financial commitments and, as part of a scheme to take over 100% of the company, crafted bogus claims of misrepresentations in the MIPA.

Almost three months after Mr. Venter filed a lawsuit against Nofar USA in Napa County, California, Nofar USA filed this action in Delaware. This lawsuit was filed in retaliation and *on the very same day* that the California court issued a tentative ruling *denying* Nofar USA's motion to dismiss Mr. Venter's MIPA-related claim. Nofar USA's initial complaint here was filed in a transparent effort to influence the California court's final ruling on the motion to dismiss.

Defendants Mr. Venter, Blue Sky 1007, Venter Ventures LLC ("Venter Ventures"), and The Venter Family Revocable Trust ("the Venter Family Trust") (collectively, "defendants") bring this motion to dismiss the First Amended Complaint ("FAC") on several grounds. First, this Court lacks personal jurisdiction over Venter Ventures and the Venter Family Trust because neither is a contract party. Second, all claims fail to state a claim upon which relief can be granted. Third, the fraud claims are not adequately pled under Rule 9(b). Finally, Nofar USA's efforts to cure the initial complaint's deficiencies with the FAC are inadequate.

Alternatively, the Court should stay this action until the California courts finally determine Mr. Venter's MIPA-related claim because the claims, here, would be compulsory counterclaims.

## II. FACTUAL BACKGROUND[1]

O.Y. Nofar is a publicly-traded Israeli company in the energy industry. (FAC, ¶ 2.) As part of its effort to enter the United States renewable energy market, O.Y. Nofar created a subsidiary, Nofar USA, which was to own a 67% stake in the two companies founded by Mr. Venter—Blue Sky Utility LLC and Blue Sky Utility Holdings LLC. (*See id.*, ¶¶ 2-3.) This ownership interest was achieved through two nearly identical Membership Interest Purchase Agreements, one for each entity. Nofar USA, Mr. Venter, Blue Sky 1007, and others were parties to the MIPA. (*Id.*, Ex. 1, Ex. 2.) Venter Ventures and the Venter Family Trust were not members of the MIPA. (*See id.*, Ex. 1, Ex. 2.) The MIPA calls for the application of Delaware law. (*See id.*, Exs. 1 & 2 at § 13.2.)

Because Nofar USA (and its parent) failed to pay the $26 million committed under the MIPA based on fabricated claims of inaccurate financials, Mr. Venter filed a lawsuit against Nofar USA on May 3, 2024, in California in the Napa Superior Court. (Declaration of Joseph Leventhal in Support of Motion to Dismiss ("Leventhal Decl."), ¶ 3, Ex. 1.) In response, Nofar USA brought a motion to dismiss the first cause of action arguing that it relates to the MIPA and should be heard in a Delaware court. (*Id.*, ¶ 4, Ex. 2.) The Napa County Court issued a tentative ruling on July 25, 2024 denying Nofar USA's motion because of the California constitutional right to a jury trial that cannot be waived by contract. (*Id.*, ¶ 5, Ex. 3.) That same day, Nofar USA filed this action.

After oral argument on July 26, 2024, the Napa County Court reversed its tentative ruling and stayed the MIPA-related cause of action and set an Order to Show Cause for October 30, 2024, which was heard and continued to February 20, 2025. (Leventhal Decl., ¶ 6, Exs. 2, 4.) The Napa Court took the matter under submission to consider whether it should make any substantive changes to its earlier order on the MIPA-related cause of action. (*Id.*, ¶ 6.)

[1] Defendants assume the truth of the complaint's allegations only for purposes of a motion to dismiss.

## III. LEGAL STANDARD

### A. Motion to Dismiss For Lack of Jurisdiction

Rule 12(b)(2) directs the court to dismiss a case when the court lacks personal jurisdiction over a defendant. FED. R. CIV. P. 12(b)(2). "[P]ersonal jurisdiction exists if two requirements are satisfied. First, there must be a statutory basis for jurisdiction pursuant to Delaware's long-arm statute. Second, the exercise of jurisdiction over the defendant must comport with the Due Process Clause of the Fourteenth Amendment." *Yankees Entertainment and Sports Network, LLC v. Hartford Fire Insurance Company*, 634 F. Supp. 3d 203, 206-07 (D. Del. 2022); *see also Deloitte Consulting LLP v. Sagitec Solutions LLC*, 692 F. Supp. 3d 421, 428-29 (D. Del. 2023).

### B. Motion to Dismiss Under Rule 12(b)(6)

To survive a motion to dismiss on Federal Rule 12(b)(6) grounds, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). Although a complaint need not contain detailed factual allegations, the plaintiff must provide more than "labels and conclusions" or "a formulaic recitation of a cause of action's elements." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### C. Pleading Fraud Under Rule 9(b)

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9. This particularity standard "requires a plaintiff to allege … the who, what, when, where, and how of the events at issue." *Bookwalter v. UPMC*, 946 F.3d 162, 176 (3d Cir. 2019) (quotation omitted).

### D. Motion to Stay

"A decision to stay litigation lies within the sound discretion of the court" and "represents an exercise of the court's 'inherent power to conserve judicial resources by controlling its own

docket.'" *Peschke Map Technologies, LLC v. J.J. Gumberg Co.*, 40 F. Supp. 3d 393, 395-96 (D. Del. 2014). When considering a motion to stay, the court considers the following factors: (1) the status of the litigation; (2) whether a stay will simplify the issues for trial; and (3) whether the granting of a stay would cause the non-moving party to suffer undue prejudice from any delay or allow the moving party to gain a clear tactical advantage over the non-moving party. *Apotex, Inc. v. Senju Pharmaceutical Co. Ltd.*, 921 F. Supp. 2d 308, 313-14 (D. Del. 2013).

## IV. ARGUMENT

Nofar USA's FAC should be dismissed in its entirety because each claim fails to state a claim upon which relief can be granted. In the alternative, because the FAC alleges compulsory counterclaims to an earlier-filed lawsuit in California Superior Court, the FAC should be stayed.

### A. The Court Lacks Personal Jurisdiction Over Certain Defendants.

Because this Court lacks personal jurisdiction over Venter Ventures and the Venter Family Trust, they must be dismissed under Rule 12(b)(2). This dismissal should be with prejudice.

#### *1. Delaware's long-arm statute does not grant personal jurisdiction.*

None of the six provisions in Delaware's long-arm statute apply. *See* 10 Del. C. § 3104(c). Venter Ventures is a "California limited liability company" that does not conduct business in Delaware. (FAC, ¶ 13; Declaration of Barend Venter in Support of Motion to Dismiss ("Venter Decl."), ¶ 3.) The Venter Family Trust is a "California revocable trust for the benefit of Venter," who is also a California resident. (FAC, ¶ 14.) The Venter Family Trust also does not conduct business in Delaware. (Venter Decl., ¶ 4.) Neither Venter Ventures nor the Venter Family Trust have contracts to supply services or things in Delaware. (*Id.*, ¶¶ 3-4.) Neither defendant is a party to the MIPA and, as such, did not subject themselves to the Delaware choice-of-law provision in that agreement. (*See generally* FAC, Ex. 1, Ex. 2.) Nofar USA's argument that Venter Ventures and the Venter Trust are "successor[s]-in-interest" to Blue Sky 1007 is inaccurate and Nofar USA

baselessly claims that Venter Ventures and the Venter Trust "assumed" Blue Sky 1007's "rights and obligations thereunder consistent with the parties' intent." (*Id.*, ¶¶ 13-14.) In fact, the Venter Family Trust is not mentioned *at all* in the Napa County action and Nofar USA's assertion that the Napa County action is "brought by Barend Venter and the Venter Family Trust" is entirely false. (*Id.*, ¶ 14; Leventhal Decl., Ex. 1.) Mr. Venter does have a minority membership interest in Blue Sky owned by Venter Ventures but only the *ownership interest* has been transferred to Venter Ventures, not Mr. Venter's *liabilities* under the MIPA. Venter Decl., ¶ 5, Ex. 7; *see Anotek, LLC v. Venture Exch., SCS*, No. CV-N19C-04-211 JRJ, 2021 WL 2577604, at *2 (Del. Super. Ct. June 22, 2021). In addition, neither defendant caused tortious injury by an act or omission in Delaware or outside the state that would be connected to activities or things in Delaware. (*See generally* FAC.) Neither defendant has any property interests in Delaware nor have they contracted to insure or act as surety to an agreement to be performed in Delaware. (Venter Decl., ¶¶ 3-4.)

#### ***2. The Court does not have general jurisdiction over these defendants.***

This Court also lacks jurisdiction over Venter Ventures or the Trust through general jurisdiction principles. In the Third Circuit, "[i]f the defendant maintains continuous and substantial forum affiliations, then general jurisdiction exists." *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 321 (3rd Cir. 2007) (internal citations, brackets, and quotations omitted).

Here, Venter Ventures has its principal place of business in California and does not conduct business in Delaware. (Venter Decl., ¶ 3.) Venter Family Trust was formed under California laws for the benefit of a California resident. (*Id.*, ¶ 4.) Neither defendant has "continuous and substantial forum contacts" in Delaware as they have no contacts with Delaware, do not conduct regular business in Delaware, and do not have other affiliations with the state. (*Id.*, ¶¶ 3-4.) Thus, this Court does not have general personal jurisdiction over Venter Ventures or the Venter Family Trust.

### *3. The Court does not have specific jurisdiction over these defendants.*

The specific jurisdiction inquiry has three parts. "First, the defendant must have purposefully directed its activities at the forum. Second, the litigation must arise out of or relate to at least one of those activities. And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise comports with fair play and substantial justice." *O'Connor*, 496 F.3d at 317. "The transaction need not be continuous; even a single transaction is sufficient if the claim has its origin in the asserted transaction." *Yankees Entertainment*, 634 F. Supp. 3d at 209 (internal citations, quotations, and brackets omitted).

Plaintiff's claims relate to representations and activities under the MIPA. (*See, e.g.,* FAC, ¶ 9 ("By this action, Nofar US seeks to hold Venter and the companies with and through which he acted accountable for their obligations under the MIPA…").) Neither Venter Ventures nor the Venter Family Trust "purposefully directed its activities at the forum" as they are not parties to the MIPA. *O'Connor*, 496 F.3d at 317. These defendants were not related to, or engaged with, Nofar USA or Blue Sky in relation to the MIPA, were not signatories, and did not have any other connection to the MIPA. (*See generally, id.*, Exs. 1-2.) Nofar USA's claim that Venter Ventures and the Venter Trust are "successor[s]-in-interest" to the MIPA are entirely inaccurate. (FAC, ¶¶ 13-14.) Mr. Venter assigned his ownership in Blue Sky to Venter Ventures. (Venter Decl., ¶ 3.) But there is no evidence that Mr. Venter assigned his liabilities under the MIPA to Venter Ventures or the Venter Trust. (*See* Venter Decl., ¶ 5, Ex. 7.) Nofar USA has no basis to claim that an assignment of liabilities was made. *Berg Chilling Systems, Inc. v. Hull Corp.*, 435 F.3d 455, 464 (3rd Cir. 2006) ("The ordinary rule of successor liability is rooted in corporate law, and it states that a firm that buys assets from another firm does not assume the liabilities of the seller merely by buying its assets."). In fact, Blue Sky 1007 is still an active company on the California Secretary of State website, meaning that Venter Ventures and the Venture Trust did not become successors-

in-interest to Blue Sky 1007 and assume all liabilities. (Leventhal Decl., ¶ 7, Ex. 5.)

In addition, contrary to Nofar USA's assertions, Venter Ventures did not "confirm[] that it is BS1007's successor-in-interest by suing Nofar US for claims arising under the MIPA." (FAC, ¶ 17.) Venter Ventures also did not "concede[] that it is bound by the MIPA's forum selection clause" and, as Nofar USA rightfully points out, Venter Ventures argued that the clause is unenforceable. (*Id.*) Defendants only conceded that Blue Sky's "interest has now been transferred to Plaintiff Venter Ventures LLC" and asserted a derivative claim for breach of fiduciary duty on behalf of Venter Venture's interest in Blue Sky. (Leventhal Decl., Ex. 1 at ¶¶ 29, 110.)

Venter Ventures and the Venter Family Trust must be dismissed for lack of jurisdiction.

**B. The Tort Claims Allege Nothing More Than a Breach of Contract.**

Nofar USA's first (fraud), third (fraudulent inducement), and fourth (negligent misrepresentation) claims must be dismissed because they are based only on a purported breach of the MIPA and not on a violation of an independent duty imposed by law. Further, the fraud claims must be dismissed because they seek the same damages as sought by the breach of contract claim.

***1. The tort claims fail to allege any independent duty.***

Nofar USA's tort claims allege nothing more than a contractual relationship gone wrong. The fraud, fraudulent inducement, and negligent misrepresentation claims are based entirely on purported misrepresentations in the MIPA. "[W]here an action is based entirely on a breach of the terms of a contract between the parties, and not on a violation of an independent duty imposed by law, a plaintiff must sue in contract and not in tort.'" *ITW Glob. Invs. Inc. v. Am. Indus. Partners Cap. Fund IV, L.P.*, No. CAN14C10236JRJCCLD, 2015 WL 3970908, at *6 (Del. Super. Ct. June 24, 2015) (quotation omitted). Accordingly, Nofar USA must proceed only on a breach of contract theory (although it unsuccessfully pleads that claim as discussed *infra*).

The FAC does nothing to hide from the obvious fact that the tort claims allege nothing

more than misrepresentations found within the four corners of the MIPA, stating, "***[i]n the MIPA***, Venter made numerous false representations and warranties regarding Blue Sky and its business and financial performance." (FAC, ¶ 5 (emphasis added).) All of the tort claims rely on the allegation that Nofar USA was harmed as a result of the "binding representations and warranties Venter made ***in the MIPA*** regarding Blue Sky's financial and business performance." (*Id.*, ¶ 22 (emphasis added).) In pleading reliance, Nofar USA continues, "Nofar US relied upon and was induced by these representations and warranties in entering into the MIPA. The representations pertained to Blue Sky's financials, business operations, profitability … and related matters." (*Id.*) The tort claims fail to plead any violation of an independent duty imposed by law.

More specifically, the FAC's claim for fraud is based entirely on defendants' purported refusal to indemnify Nofar USA under the MIPA's indemnification clause. (*See, generally,* FAC, ¶¶ 79-87.) Likewise, the fraudulent inducement claim is based entirely on purported misrepresentations in the MIPA. As Nofar USA pleads, the inducement claim is based on "Blue Sky's Financial Statements, profitability, subscribed tenant consumption levels, Indebtedness, and past performance" (*id.*, ¶ 104), which are all representations Nofar USA relies on to support its contract claim. (Compare *id.* at ¶ 104 with *id.* at ¶¶ 93-97.) These are also the same purported misrepresentations that Nofar USA admits are contained in the MIPA. (*See id.*, ¶ 22.)

Nofar USA's negligent misrepresentation claim, alleged only against Mr. Venter, fares no better and is based on the same purported misrepresentations as the fraudulent inducement claim. (*See* FAC, ¶ 111 ("Blue Sky's profitability, tenant consumption levels, indebtedness, and past performance").) These are all representations contained in the MIPA. Nofar USA utterly fails to allege any independent duty apart from the MIPA, which requires the dismissal of the tort claims.

Nofar USA's attempts to cure these deficiencies through its FAC also fall short. Nofar

USA has done no more than assert that Venter Ventures and the Venter Trust are successors-in-interest to Blue Sky (which, as discussed *supra*, is insufficient) and assert that "fraudulent conduct was intentionally, deliberately, and willfully committed by Venter…" for each tort cause of action. (FAC, ¶¶ 81, 103.) Nofar USA also alleges that Venter used and disclosed confidential information to "Blue Sky's detriment, in an attempt to bully Nofar US into dropping its claims against him." (FAC, ¶ 70.) That allegation, like the others, only claims violations of the MIPA and its obligation to "maintain in confidence" certain information. (*Id.*, ¶ 71.)

To the extent any of the tort claims rely on purported misrepresentations about the company's performance found outside of the MIPA, those are not actionable due to the MIPA's complete integration clause. (*Id.*, Ex. 1 at § 13.4; Ex. 2 at § 13.4.) Any purported extracontractual representations about the company's financials or performance would contradict the terms of the MIPA. (*See, e.g., id.*, Ex. 1 at p. 30 (Art. III); Ex. 2 at p. 30 (Art. III).) *See also Trifecta Multimedia Holdings Inc. v. WCG Clinical Servs. LLC*, 318 A.3d 450, 469–70 (Del. Ch. 2024) ("a standard integration clause does bar the admission of extrinsic evidence for the purpose of varying or contradicting the terms of that contract") (quotation omitted).

***2. The fraud claims seek the same damages as the contract claim.***

As a further nail in the coffin of the fraud claims, they must be dismissed because they seek the same damages as those sought in the breach of contract claim. "[T]o successfully plead a fraud claim, the allegedly defrauded plaintiff must have sustained damages as a result of a defendant's action. The damages allegations may not simply 'rehash' the damages allegedly caused by the breach of contract." *ITW Glob. Invs*, 2015 WL 3970908, at *5 (quotations omitted).

The FAC is blatant in seeking identical damages for the fraud and breach of contract claims. The breach of contract claim states: "Pursuant to MIPA § 7.2(a), Defendants are required to indemnify Nofar US for its Damages arising from the above." (FAC, ¶ 79.) The breach of contract

claim concludes, defendants "have refused to satisfy their indemnity obligations and are in breach thereof. … Nofar US has suffered damages exceeding $58,000,000…." (*Id.*, ¶¶ 98-99.) This is almost identical to the fraud claim: "Pursuant to MIPA § 7.2(a), Defendants are required to indemnify Nofar US for its Damages arising from the above." (*Id.*, ¶ 87.) The fraud claim continues, "[defendants] refused to satisfy their indemnity obligations and are in breach thereof. … Nofar US is accordingly entitled to its full damages exceeding $58,000,000…." (*Id.*, ¶¶ 87-88.)

Finally, these first two references to "damages exceeding $58,000,000" are nearly identical to the claim for fraudulent inducement: "As a direct and proximate result of Nofar US's reliance and inducement based on these false and misleading representations, Nofar US has suffered damages exceeding $58,000,000 …." (*Id.*, ¶ 109.) Because Nofar USA seeks the same damages for the fraud claims as sought in the breach of contract claim, the fraud claims must be dismissed.[2]

**C. The Fraud Claims Fail to Meet Rule 9(b)'s Pleading Standards.**

Nofar USA's fraud and fraudulent inducement claims fail for the independent reason that they fail to meet the pleading standard of Rule 9(b). "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (citation omitted). Rule 9(b) "requires a plaintiff to allege … the who, what, when, where, and how of the events at issue." *Bookwalter*, 946 F.3d at 176 (quotation omitted).

Nofar USA utterly fails to comply with Rule 9(b). First, the FAC makes no particularized allegations as to Venter Ventures, the Venter Family Trust, and Blue Sky 1007 but only alleges misrepresentations by Mr. Venter. Because they have no notice regarding the "what, when, where,

[2] As noted *supra*, the MIPA contains a complete integration clause, which would separately bar Nofar USA's tort claims. (FAC, Ex. 1 at § 13.4; Ex. 2 at § 13.4.)

and how" of their purported fraud, these claims against the other defendants should be dismissed.

As to Mr. Venter, the fraud claims fail to meet Rule 9(b) because, as discussed *supra*, all purported misrepresentations are only actionable as a contract claim. To the extent Nofar USA alleges otherwise, the "what, when, where, and how" of Mr. Venter's purported misrepresentations are completely omitted from the pleading. All fraud claims should be dismissed.

### D. The Indemnification Breach of Contract Claim Fails Because the FAC Does Not Allege Any Misrepresentations Under the MIPA.

The Court should dismiss the breach of contract (indemnification) claim as to all defendants because the FAC fails to allege any misrepresentations in the MIPA, a prerequisite to any purported indemnification obligation. The breach of contract claim is predicated on defendants' purported refusal to indemnify Nofar USA under the MIPA's terms, which is triggered only following certain misrepresentations or breaches of warranties. (*See, e.g.,* FAC, ¶¶ 92, 98 & p. 22.) But no defendant had an obligation to indemnify Nofar USA because the FAC fails to allege any misrepresentation or breach of warranty. Accordingly, there is no breach.

#### *1. There are no financial models as part of the contract.*

Nofar USA relies on the purported inaccuracy of the company's financial models attached as Schedule 3.7(g). (*Id.*, ¶ 45 ("Venter represented in the MIPA that the Financial Models 'reflect a good faith estimate of the anticipated revenues and costs of each Project Company.' MIPA § 3.7(g).").) The MIPA states, "The financial model of each Project ***is attached hereto*** as Schedule 3.7(g) (the 'Financial Models') and reflect a good faith estimate of the anticipated revenues and costs of each Project Company." (*Id.*, Ex. 1 at § 3.7(g); Ex. 2 at § 3.7(g) (emphasis added).)

But the MIPA, with a complete integration clause, has no financial models attached. Instead, Schedule 3.7(g) states only "***Reference*** is made to the financial models provided in the

data room prior to the date of the Agreement." (FAC, Ex. 1, p. 200; Ex. 2, p. 203.) (emphasis added.) Critically, there is no language in the MIPA to "incorporate" anything from the data room. Instead, there is only an express intent to include, as part of the contract, those financial models that were ***attached*** to the MIPA. In this case, there are none and the financial models, therefore, cannot form the basis of a purported misrepresentation prompting the indemnification requirement.

"'[A] ***mere reference*** in one agreement to another agreement, without more, does not incorporate the latter agreement into the former by reference.' Rather, '[t]o incorporate one document into another, an ***explicit manifestation of intent*** is required.'" *Town of Cheswold v. Cent. Delaware Bus. Park*, 188 A.3d 810, 819 (Del. 2018) (emphasis added). Schedule 3.7(g)'s language that "'***[r]eference*** is made to the financial models provided in the data room prior to the date of the Agreement'" does not explicitly manifest an intent to integrate them into the MIPA. (FAC, ¶ 25.) (emphasis added.) Similarly, the allegation that Nofar USA "contemporaneously downloaded the entire data room and its contents are readily available" does not somehow defeat the MIPA's integration clause. (*Id.*) The reason Delaware law requires a clear manifestation of intent is self-evident here. Now that a dispute has arisen, what financial models did the parties intend to be part of the MIPA? How would the parties define what a "financial model" is that was intended to be part of the contract? It is improper for a court or jury to make these determinations without the parties manifesting an intent to incorporate materials from the "data room."

#### ***2. The FAC inadequately alleges misrepresentations of subscription rates.***

Nofar USA separately attempts to trigger the MIPA's indemnification obligation by alleging that the representation in Section 3.7(i) was false. (FAC, ¶¶ 55-57.) But that representation states, "***Other than as set forth in Schedule 3.7(i)*** attached hereto, the total amount of electricity subscribed for by Customers … is at least 125% of each applicable Project's total estimated annual electric production." (*Id.*, Ex. 1 at § 3.7(i); Ex. 2 at § 3.7(i) (emphasis added).) To be false,

therefore, there must be a project ***not included*** on Schedule 3.7(i) with subscription rates at or below 125% of each applicable Project's total estimated annual electric production.

But there are no projects not included on Schedule 3.7(i) with ***any*** subscription rates, making it impossible to be misrepresented. Schedule 3.7(i) of the MIPA identifies 22 projects and their subscription rates. (*Id.*, Ex. 1 at p. 201.) No coincidence, the MIPA identifies a total of only 22 ***active*** projects.[3] (*See id.*, Ex. 1 at p. 167.) Because the representation in Section 3.7 of the MIPA is one of exclusion, *i.e.,* "other than as set forth in Schedule 3.7(i)," it is impossible for a defendant to have made a misrepresentation thereunder. There were no projects with customers subscribing to electricity output other than those on Schedule 3.7(i). Put simply, the representation in Section 3.7(i) was ***not*** a representation that Schedule 3.7(i) was accurate (although defendants have no reason to believe it is not accurate). To the extent Nofar USA claims Schedule 3.7(i) is a breach under Section 3.26 of the MIPA, Nofar USA fails to comply with Rule 8 because the FAC fails to allege how the representations were inconsistent with the circumstances in which they were made.

***3. "True and complete copies" of financial statements were provided.***

Nofar USA cannot trigger the indemnification obligation by claiming true and complete copies of the company's financial statements were not provided. (*See* FAC, ¶¶ 58-61.) They were. Simply because Nofar USA believes that the financial statements were not 100% accurate does not mean that the true and complete copies of the company's financial statements were not provided. Instead, Nofar USA claims that some aspects of the financial statements did not comply with GAAP accounting and states only that they "did not meet th[e] standard" of "'hav[ing] been

[3] Page 167 of Exhibit 1 to the FAC identifies the company's "Current Projects." There, three projects in Connecticut are identified as "Enfield," "Willimantic," and "Montville," which correspond to Schedule 3.7(i)'s "CT Montville," "CT Willimatic" [sic], and "CT Stop&Shop." Page 167 also identifies "Brixmor – Plaza by the Sea," but notes that the MW production is "N/A" and, therefore, is not in Schedule 3.7(i).

prepared in accordance with GAAP'" and to "'fairly present the financial condition, cash flows and results of operations of the Company[.]'" (*See id.*, ¶ 58.) But the FAC fails to allege what exactly about the financial statements fails to comply with GAAP and *how* the financial statements allegedly "did not meet th[e] standard." (*Id.*) In fact, the MIPA only requires that the company make "commercially reasonable efforts to prepare and keep books, records and accounts that, accurately and fairly reflect the transactions and dispositions of its assets in all material respects." (*Id.*, Ex. 1 at § 3.14(b); Ex. 2 at § 3.13(b).) That was done here and the FAC does not allege how any discrepancies are inconsistent with commercially reasonable efforts.

#### ***4. The MIPA disclosed indebtedness to Bright Power Inc.***

The FAC's final alleged misrepresentation, which Nofar USA claims triggered the indemnification obligation, was that "Schedule 3.13(d) sets forth an accurate and complete list of all Company Indebtedness." (*Id.*, ¶ 62.) Nofar USA claims this was false because Schedule 3.13(d) did not include all company indebtedness. (*See id.*) To support the claim that Schedule 3.13(d) is not complete, the complaint uses a distorted excerpt of the schedule and declares that it omits "the invoices sent to Blue Sky by Venter's other company, Bright Power Inc. ('BPI')" (*Id.*, ¶ 63.)

But the definition of "Company Indebtedness" in the MIPA does not include "a vendor performing services for Blue Sky," which is how Nofar USA describes BPI (*id.*, ¶ 63):

> all (a) indebtedness for borrowed money or indebtedness issued or incurred in substitution or exchange for indebtedness for borrowed money (including credit card liabilities); (b) indebtedness evidenced by any note, bond, debenture, mortgage or other debt instrument, debt security or other similar instrument, or that is otherwise secured by an Encumbrance; (c) any earn-out or milestone agreements or other deferred payment obligations, including for the deferred purchase price of assets, property (including deferred rent or other deferred lease payments), goods or services, and including deferred compensation arrangements and underfunded employee benefit obligations; (d) accrued payroll obligations, vacation accruals, severance obligations, retention bonuses and other compensatory payment obligations to directors, members, officers or Business Employees, together with the employer portion of any payroll or other Taxes associated with such payments, (e) obligations under leases that would be characterized as capital leases under

> GAAP or IFRS, (f) any dividends declared or committed but that remain unpaid, (g) obligations under any interest rate, currency or other hedging agreement (determined on the basis of actual, not notional, obligations), (h) obligations under conditional sale or other title retention agreements, (i) any obligation or liability arising from cash/book overdrafts, (j) principal, interest (including default interest), premiums, penalties (including prepayment and early termination penalties and default penalties or judgments), breakage fees; (k) any indebtedness of another entity or person, the payment of which is (i) guaranteed, directly or indirectly by the Company or any Portfolio Company or Project Company; or (ii) secured, directly or indirectly, by a Lien against any right, title and interest in and to the business, properties, assets and rights of any kind, whether tangible or intangible, real or personal owned by the Company; (l) any Taxes the payment of which has been deferred by the Company under any COVID 19 Law; (m) any other amounts owing in respect of the items described in the foregoing clauses (a) through (l), including any and all off-balance sheet liabilities and obligations of the Company with respect to any of the above.

(*Id.*, Ex. 1 at pp. 6-7; Ex. 2 at 6-7.) Accounts payable to "vendors performing services" are not related to: (a) borrowed money; (b) a debt instrument; (c) a deferred payment obligation; (d) accrued payroll; (e) capital leases; (f) unpaid dividends; (g) a hedging agreement; (i) overdrafts; (j) premiums or penalties; (k) indebtedness of another; (l) deferred tax payments; or (m) an off-balance sheet liability. (*See id.*) Money owed to BPI was not required to be on Schedule 3.13(d).

Nofar USA concedes (but not in its original complaint) that Schedule 3.13(d) reveals over $1.7 million owed to BPI due to a loan. (FAC, ¶ 63; Ex. 1 at p. 212; Ex. 2 at p. 215.) A loan does meet the MIPA's definition of "Company Indebtedness." Like all others, this purported misrepresentation did not trigger the MIPA's indemnification obligation and the breach of contract claim fails in its entirety.

### E. The Indemnification Contract Claim Fails Against Most Defendants.

The indemnification contract claim cannot proceed against any defendant other than Mr. Venter. First, Venter Ventures and the Venter Family Trust are not parties to the MIPA and Nofar USA's assertion that Venter Ventures and the Venter Family Trust are successors-in-interest is insufficient. "Delaware does not recognize breach of contract claims against non-parties to the

contract." *Tygon Peak Cap. Mgmt., LLC v. Mobile Invs. Investco, LLC*, No. CV 2019-0847-MTZ, 2022 WL 34688, at *26 (Del. Ch. Jan. 4, 2022) (quotation omitted). The FAC's assertion that the "parties' intent was for Venter Ventures to step in to BS1007's shoes under the MIPA" is unsupported as Nofar USA does not allege that Venter Ventures or the Venter Family Trust assumed Blue Sky's liabilities under the MIPA. (FAC, ¶ 13; Venter Decl., ¶ 5, Ex. 7.)

More importantly, the breach of contract claim (indemnification) cannot proceed against Blue Sky 1007 and the nonparties because there is no alleged breach by them. The FAC's only allegation of a breach of contract is the failure of "defendants" to indemnify Nofar USA under the MIPA (FAC, ¶ 98) as highlighted by the title of the cause of action: "COUNT II: BREACH OF CONTRACT (INDEMNIFICATION)." (*Id.*, at p. 29.)

But as Nofar USA concedes, the MIPA has an definite process triggering indemnification. Section 7.3(a) required Nofar USA to deliver a "Claim Notice" to the indemnitor within certain timelines. (*Id.*, Ex. 1 at § 7.3(a); *see also id.*, Ex. 2 at § 7.2(a); *see also id.*, ¶¶ 37-38.) Here, the claim notice and indemnification demand was made ***only*** to Mr. Venter. (*See* Venter Decl., ¶ 6, Ex. 8 at p. 1 ("the undersigned, in its capacity as Buyer, hereby delivers this Dispute Notice…and Claim Notice…to Venter" and "Venter is liable to Buyer for breaches of the Representations and Warranties enumerated in Article III of the MIPAs").) The FAC's allegation that the claim notice was made to Mr. Venter personally and "in his capacity as sole member of Blue Sky 1007" is inconsistent with the judicially-noticeable document. (FAC, ¶ 69.) Accordingly, Blue Sky 1007's purported indemnification obligation was never triggered and no breach could have occurred.

**F. The Implied Covenant of Good Faith and Fair Dealing Is Improperly Pled.**

In addition to improperly relying on a court-filed document to assert its claim, the Court should dismiss the breach of the implied covenant of good faith and fair dealing claim because it

is improperly pled. To state this claim, a party must "allege a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the plaintiff." *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 888 (2009). Here, Nofar USA only alleges that Venter's alleged conduct "had the effect of preventing Nofar US from receiving the fruits of its bargain under the MIPA." (FAC, ¶ 121.) But the mere impression that certain conduct "***risked*** … breach of the applicable lease agreements … and creating the false impression that Blue Sky does not pay its bills" is insufficient. (FAC, ¶ 76.) In Delaware, "the plaintiff must allege a ***specific implied contractual obligation*** and allege how the violation of that obligation denied the plaintiff the fruits of the contract." *Kuroda*, 971 A.2d at 888 (emphasis added). That was not done here and this claim fails. Even if there was a violation of the lease agreements, the claim would "fail because the express terms of the contract will control such a claim." (*Id.*)

### G. The Confidential Information Breach of Contract Claim Fails Because No Confidential Information Was Disclosed.

The Court should dismiss the breach of contract (confidential information) claim as to Mr. Venter because the alleged confidential information is the type that Nofar USA makes publicly available and thus not confidential at all. The FAC asserts that Venter disclosed certain confidential information related to compensation, expenses, and internal strategies for Blue Sky that are allegedly protected by the MIPA. (FAC, ¶¶ 72, 127.) In fact, Blue Sky is discussed extensively in O.Y. Nofar Energy Ltd.'s, Nofar USA's parent company, public reports. (Leventhal Decl., ¶ 8, Ex. 6.) These public reports include Blue Sky information related to compensation (*id.* at Part B, p. 11), overhead costs (*id.* at Part B, p. 38), loan information including interest rates (*id.* at Part B, p. 32, 58), revenues (*id.* at Part B, p. 4-5), company strategy (*see, e.g., id.* at Part B, p. 5 ("Blue Sky enters into agreements with tenants of the property for the sale of credit for the electricity supplied to the grid until the end of the tenant's lease agreement")), and project projections (*id.* at

Part B, p. 9). Because the information disclosed in litigation in Napa County is not actually confidential information, there was no obligation on Mr. Venter to keep it confidential and Nofar USA's claim fails. *VLIW Technology, LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (2003) ("In order to survive a motion to dismiss for failure to state a breach of contract claim, the plaintiff must demonstrate…***the breach of an obligation imposed by that contract***") (emphasis added).

**H. In The Alternative, This Action Should be Stayed.**

Should the Court not dismiss the entire action, it should be stayed because the claims here are compulsory counterclaims to an earlier-filed litigation in California Superior Court.

On May 3, 2024, Mr. Venter filed a lawsuit in Napa County, California, against Nofar USA and others alleging four claims for relief including one for fraud and concealment. (Leventhal Decl., ¶ 3, Ex. 1.) The Napa County Court determined that the fraud and concealment claim arose out of the MIPA and issued an order staying the cause of action to enable the parties to pursue the claim in Delaware pursuant to the MIPA's forum selection clause. (*Id.*, ¶ 4, Ex. 2.) As part of that order, the Napa County Court issued an OSC for October 30, 2024. (*See id.*) At the hearing on the OSC, the Napa County Court agreed to take the matter under submission to consider whether to make any changes to its earlier order. (Leventhal Decl., ¶ 6.) As of the filing of this motion, the Napa County Court has yet to issue any subsequent ruling. (*Id.*)

If Mr. Venter's fraud and concealment claim remains in the Napa County Court, the claims filed by Nofar USA in this Court are indisputably compulsory counterclaims that should have been filed in California. Because Mr. Venter's claim for fraud and concealment is still alive in Napa County Court (albeit stayed), and the California Court's ultimate action with respect to that claim is uncertain, this Court should stay this action until a final determination is made by the California court including any appeal that Mr. Venter may elect. Nofar USA's claims may properly be the

subject of litigation before this Court or Mr. Venter may bring a subsequent Rule 12(c) motion.

### *1. The status of the litigation favors a stay.*

"[G]ranting a stay when a case is in its early stages can be said to advance judicial efficiency and maximize the likelihood that neither the Court nor the parties expend their assets addressing invalid claims." *Celorio v. On Demand Books LLC*, 201 WL 4506411, at *1 n.1 (D. Del. Aug. 21, 2013). Here, the parties have not had "substantial time and resources … devoted … to scheduling and the resolution of discovery disputes" nor do the parties have "milestones in the schedule to occur within the next six months" that would disfavor a stay. *ImageVision.Net, Inc. v. Internet Payment Exchange, Inc.*, 2013 WL 663535, at *4 (D. Del. Feb. 25, 2013).

### *2. A stay would simplify the issues at trial.*

A court considers whether a stay will simplify the issues in question and at trial by assessing if there are overlapping claims in related actions. *See ImageVision.Net, Inc.*, 2013 WL 663535, at *4. Here, there are overlapping claims in this matter and the Napa County Action. Mr. Venter and Venter Ventures are plaintiffs in the Napa County Action and brought claims against Nofar USA for, among others, fraud and concealment. If the fraud and concealment claim ultimately survives in California, then Nofar USA's claims here would be compulsory counterclaims in that action. Granting a stay would simplify the issues at trial as it may eliminate the need for this litigation altogether as all claims would be resolved in California. This factor also weighs in favor of a stay.

### *3. A stay would not unduly prejudice plaintiff.*

The "most substantial and important issue" in a stay is undue prejudice. *ImageVision.Net, Inc.*, 2013 WL 663535, at *4. "With respect to prejudice, the court must look to the competing interests of the parties and determine if there is a 'fair possibility' that a stay would be detrimental to the opposing party." *Id.* at *5. Courts look to several factors to assess prejudice and whether a movant would gain an unfair tactical advantage if a stay were granted. *Toshiba Samsung Storage*

*Technology Korea Corporation v. LG Electronics, Inc.*, 193 F. Supp. 3d 345, 348 (D. Del. 2016).

Perhaps most relevant to whether a stay would prejudice Nofar USA is the fact that plaintiff filed the present action on the very day the Napa Court issued a tentative ruling denying its motion to dismiss. (Leventhal Decl., ¶ 5, Ex. 3.) The filing of this action was classic gamesmanship, initiated for the purpose of bolstering plaintiff's argument in California seeking dismissal. Considering plaintiff's motivation in filing the present action, there is no prejudice in staying this matter until California courts resolve the issue of whether Mr. Venter's claim will proceed there.

## V. CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court dismiss Nofar USA's FAC with prejudice. In the alternative, defendants request that the action be stayed pending final resolution of Nofar USA's motion to dismiss Mr. Venter's MIPA-related claim in California.

Dated: November 8, 2024

*/s/ Peter J. Keane*
Laura Davis Jones (DE Bar No. 2436)
Peter J. Keane (DE Bar No. 5503)
Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Fl.
P.O. Box 8705
Wilmington, DE 19899-8705
Phone: (302) 652-4100
Email: ljones@pszjlaw.com
pkeane@pszjlaw.com

-and-

Michael Cypers (*pro hac vice*)
Joseph Leventhal (*pro hac vice*)
Wogai Mohmand (*pro hac vice*)
Glaser Weil Fink Howard Jordan & Shapiro LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, CA 90067
Phone: (310) 553-3000
Email: mcypers@glaserweil.com
jleventhal@glaserweil.com
wmohmand@glaserweil.com

*Attorneys for Defendants Barend Venter, Venter Ventures LLC, Blue Sky 1007 LLC, and The Venter Family Revocable Trust*