**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

NOFAR USA LLC,

Plaintiff,

v.

BAREND VENTER, VENTER VENTURES LLC, BLUE SKY 1007 LLC, and THE VENTER FAMILY REVOCABLE TRUST,

Defendants.

C.A. No. 1:24-cv-00870-JLH

**PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

OF COUNSEL:

Michael B. Carlinsky
Yehuda Goor
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000
michaelcarlinsky@quinnemanuel.com
yehudagoor@quinnemanuel.com

David M. Grable
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
(213) 443-3000
davegrable@quinnemanuel.com

Michael A. Barlow (#3928)
Veronica B. Bartholomew (#6224)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
500 Delaware Avenue, Suite 220
Wilmington, Delaware 19801
(302) 302-4000
michaelbarlow@quinnemanuel.com
veronicabartholomew@quinnemanuel.com

*Attorneys for Plaintiff Nofar USA LLC*

Dated: November 22, 2024

## TABLE OF CONTENTS


**Page**

PRELIMINARY STATEMENT ....1

NATURE AND STAGE OF THE PROCEEDINGS ....2

SUMMARY OF ARGUMENT ....2

STATEMENT OF FACTS ....3

ARGUMENT ....4

I. THE LEGAL STANDARD ....4

II. VENTER VENTURES AND VENTER TRUST ARE SUBJECT TO JURISDICTION ....4

III. THE FRAUD CLAIMS ARE SEPARATE AND DISTINCT FROM THE BREACH-OF-CONTRACT CLAIMS AND SUFFICIENTLY PLED (COUNTS I AND III) ....6

A. The Fraud Claims Pertain to Intentional Conduct and Pre-Signing Inducement ....6

B. The Fraud Claims Seek Different Damages from the Breach of Contract Claims ....8

C. The Fraud Claims Satisfy Federal Rule 9(b) ....9

IV. THE FAC STATES A NEGLIGENT MISREPRESENTATION CLAIM (COUNT IV) ....11

V. THE FAC STATES BREACH OF CONTRACT CLAIMS (COUNT II, VI) ....12

A. The FAC States a Claim for Misrepresentations Under the MIPA (Count II) ....12

*1. The Financial Models are Incorporated in the MIPA* ....12

*2. The FAC States a Claim for Misrepresentation of Subscription Rates* ....14

*3. The FAC States a Claim for Breach of the Financial Statements Representation* ....14

*4. The FAC States a Claim for Misrepresentation of Company Indebtedness* ....16

B. All Defendants are Liable for Indemnification (Count II) ....17

C. The FAC States a Claim for Breach of Confidentiality Obligations (Count VI) ....18

VI. THE IMPLIED COVENANT IS PROPERLY PLED (COUNT V) ....19

VII. THE ALTERNATIVE REQUEST FOR A STAY SHOULD BE DENIED ....19

CONCLUSION ....20

# TABLE OF AUTHORITIES

**Page**

## Cases

*Abry Partners V, L.P. v. F & W Acquisition LLC*,
891 A.2d 1032 (Del. Ch. 2006)....................9, 10

*AJZN, Inc. v. Yu*,
2015 WL 331937 (D. Del. Jan. 26, 2015)....................14, 17

*Anschutz Corp. v. Brown Robin Cap., LLC*,
2020 WL 3096744 (Del. Ch. June 11, 2020)....................9

*Anvil Holding Corp. v. Iron Acquisition*,
2013 WL 2249655 (Del. Ch. May 17, 2013)....................8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................4

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*,
571 U.S. 49 (2013)....................19

*Aveta Inc. v. Cavallieri*,
23 A.3d 157 (Del. Ch. 2010)....................5

*BE&K Eng'g Co. v. RockTenn CP*,
2013 WL 5775403 (Del. Ch. Sept. 27, 2013)....................5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................4

*Cantor Fitzgerald, L.P. v. Cantor*,
1998 WL 842316 (Del. Ch. Nov. 10, 1998)....................19

*Cipla USA, Inc. v. Ipsen Biopharmaceuticals, Inc.*,
2024 WL 307699 (D. Del. Jan. 26, 2024)....................15

*Ingres Corp. v. CA, Inc.*,
8 A.3d 1143 (Del. 2010)....................19, 20

*In re DBSI, Inc.*,
468 B.R. 663 (Bankr. D. Del. 2011)....................18

*DuPont de Nemours, Inc. v. Hemlock Semiconductor Operations LLC*,
2024 WL 3161799 (Del. Super. June 10, 2024)....................13

*E.I. DuPont de Nemours v. Rhone Poulenc Fiber & Resin Intermediates*,
269 F.3d 187 (3d Cir. 2001)....................5

*Exit Strategy v. Festival Retail Fund BH*,
2023 WL 4571932 (Del. Ch. July 17, 2023)....................13

*Flora v. Cnty. of Luzerne*,
776 F.3d 169 (3d Cir. 2015)....................15, 17, 18

*Foglia v. Renal Ventures Mgmt., LLC*,
754 F.3d 153 (3d Cir. 2014)....................4

*Fowler v. UPMC Shadyside*,
578 F.3d 203 (3d Cir. 2009)....................18

*Great Hill Equity Partners IV, LP v. SIG Growth Equity Fund, LLP*,
2020 WL 948513 (Del. Ch. Feb. 27, 2020) ....................9

*Infinity Lab'y Grp. Inc. v. Odegard*,
2022 WL 17978274 (D. Del. Dec. 28, 2022)....................10

*ITW Glob. Invs. Inc. v. Am. Indus. Partners Cap. Fund IV*,
2015 WL 3970908 (Del. Super. Ct. June 24, 2015) ....................6

*Kainos Evolve, Inc. v. InTouch Techs., Inc.*,
2019 WL 7373796 (Del. Ch. Dec. 31, 2019)....................9

*Kuramo Cap. Mgmt. v. Seruma*,
2024 WL 1888216 (Del. Ch. Apr. 30, 2024)....................16

*Levy Fam. Invs., LLC v. Oars + Alps LLC*,
2022 WL 245543 (Del. Ch. Jan. 27, 2022)....................7, 9

*Lieberman v. BeyondTrust Corp.*,
2020 WL 1815547 (D. Del. Apr. 9, 2020)....................11

*Livery Coach Sols. v. Music Express/E*,
245 F. Supp. 3d 639 (D. Del. 2017)....................8

*Manti Holdings v. Authentix Acquisition Co.*,
261 A.3d 1199 (Del. 2021) ....................14

*Metcalfe v. Renaissance Marine, Inc.*,
566 F.3d 324 (3d Cir. 2009)....................4

*Narrowstep, Inc. v. Onstream Media Corp.*,
2010 WL 5422405 (Del. Ch. Dec. 22, 2010)....................7

*Osram Sylvania Inc. v. Townsend Ventures, LLC*,
2013 WL 6199554 (Del. Ch. Nov. 19, 2013) ........................................................7, 11, 15, 16

*PPL Corp. v. Riverstone Holdings LLC*,
2019 WL 5423306 (Del. Ch. Oct. 23, 2019) ..................................................................20

*Prairie Cap. III, L.P. v. Double E Holding Corp.*,
132 A.3d 35 (Del. Ch. 2015).........................................................................................10

*Rheault v. Halma Holdings Inc.*,
2023 WL 8005318 (D. Del. Nov. 7, 2023) .....................................................................7

*Rocke v. Pebble Beach Co.*,
541 F. App'x 208 (3d Cir. 2013) ....................................................................................6

*Roma Landmark Theaters v. Cohen Exhibition Co.*,
2020 WL 5816759 (Del. Ch. Sept. 30, 2020) ................................................................10

*Seegar v. Anticola*,
No. 13-2030-LPS, 2015 WL 1149537 (D. Del. Mar. 12, 2015) ...................................4

*Semerenko v. Cendant Corp.*,
223 F.3d 165 (3d Cir. 2000)............................................................................................4

*Swipe Acquisition Corp. v. Krauss*,
2020 WL 5015863 (Del. Ch. Aug. 25, 2020) ..............................................................7, 9

*Town of Smyrna v. Kent Cnty. Levy Ct.*,
2004 WL 2671745 (Del. Ch. Nov. 9, 2004) ..................................................................17

*Town of Cheswold v. Cent. Del. Bus. Park*,
188 A.3d 810 (Del. 2018) ..............................................................................................13

*Toys "R" Us, Inc. v. Step Two, S.A.*,
318 F.3d 446 (3d Cir. 2003)............................................................................................4

*Trifecta Multimedia Holdings v. WCG Clinical Servs.*,
318 A.3d 450 (Del. Ch. 2024)..........................................................................................8

*Underwood v. Benefit Express Servs.*,
2018 WL 6819003 (D. Del. Dec. 28, 2018)...................................................................11

*Vichi v. Koninklijke Philips Elecs*,
85 A.3d 725 (Del. Ch. 2014)..........................................................................................11

*Vortex Infrastructure Holdco LLC v. Kane*,
2024 WL 3887117 (Del. Ch. Aug. 21, 2024) ................................................................13

**Statutes & Rules**

Cal. Code Civ. P. § 426.30(b)(2) ....................20

Fed. R. Civ. P. 9(b) ....................9, 10

Fed. R. Civ. P. 12(b)(2)....................4

Fed. R. Civ. P. 12(b)(6)....................4

Plaintiff Nofar USA LLC ("Nofar US") respectfully submits its Answering Brief in Opposition to Defendants Barend Venter, Venter Ventures LLC, Blue Sky 1007 LLC, and The Venter Family Revocable Trust's (collectively, "Defendants") Motion to Dismiss (the "Motion") (D.I. 26) Nofar US's First Amended Complaint (the "FAC").[1] (D.I. 23.)

**PRELIMINARY STATEMENT**

Nofar US alleges facts establishing that Mr. Venter and the entities he owns perpetrated fraud to induce Nofar US into buying a majority interest in his struggling business, for a price far exceeding its true value. The business, Blue Sky, is a California-based energy company founded by Venter. To artificially inflate Blue Sky's value and secure his windfall, Venter manipulated Blue Sky's financial and business performance data and then fed it to Nofar US in the form of binding contractual representations and warranties embodied in the MIPA the parties executed.

Nofar US uncovered Venter's fraud in the aftermath of the transaction, once it gained access to Blue Sky's true records as the new majority holder. The FAC contains detailed, specific allegations of the representations and warranties Venter fraudulently made, spanning financial statements, business performance, customer data, and indebtedness. The FAC contains granular allegations of each misrepresentation—demonstrating that Venter and the other Defendants, through which Venter operates, are liable for fraud, fraudulent inducement, negligence, and breach of contract. The FAC further establishes that, after Nofar US confronted him about his fraud, Venter breached the MIPA to harm Nofar US. He did so by impermissibly disclosing Blue Sky confidential information and violating the covenant implied in the MIPA that he would not use BPi—Blue Sky's largest contractor which Venter owns and controls—to destroy Blue Sky's value.

Defendants make no serious attempt to deal with the sufficiency of the FAC's allegations

[1] Capitalized terms used but not defined have the meanings provided in the FAC and the MIPA.

or the elements of its causes of action. Instead, Defendants hope to make Nofar US's allegations go away without having to face their substance, arguing that the fraud and negligence claims constitute impermissible bootstrapping or are barred by a boilerplate integration clause. But these theories fail under clear Delaware law and the Motion offers no fallback position. Defendants' challenges to the FAC's remaining allegations are replete with factual disputes that the Court cannot resolve at this juncture.

Similarly unavailing is Defendants' last ditch effort to avoid facing liability by seeking to stay this action in favor of litigation they commenced in California. Unassailable authority precludes such relief where, as here, the parties are bound by a Delaware forum selection clause.

## NATURE AND STAGE OF THE PROCEEDINGS

On July 25, 2024, Nofar US commenced this action. (D.I. 1.) On October 4, 2024, Defendants moved to dismiss or, in the alternative, stay the action. (D.I. 10.) On October 25, 2024, Nofar US filed the FAC. (D.I. 23.) In light of the FAC, on October 31, 2024, this Court dismissed as moot Defendants' motion to dismiss. (D.I. 24.) On November 8, 2024, Defendants filed the Motion, seeking to dismiss or, in the alternative, stay the FAC. (D.I. 25, 26.)

## SUMMARY OF ARGUMENT

1. Venter Ventures and the Venter Trust are subject to personal jurisdiction because they invoked the MIPA in litigation and are thus bound by its personal jurisdiction provision.

2. The fraud claims are separate and distinct from the breach of contract claim because they allege intentional conduct aimed to induce Nofar US and seek different damages.

3. The remaining claims are sufficiently pled and Defendants raise nothing but factual disputes inappropriate for a motion to dismiss or other invalid arguments.

4. A stay is unwarranted under controlling precedent because of the forum selection clause.

## STATEMENT OF FACTS

On May 25, 2021, Nofar US entered into the MIPA and acquired 67% of Blue Sky from Venter and his partner, who were left with 16.5% each. As consideration for the sale, Nofar US committed close to $100 million as cash, investments, and a loan facility, including millions paid to Venter. In the MIPA, Venter and his wholly-owned company Defendant BS1007 "jointly and severally" made multiple representations to Nofar US regarding Blue Sky's financial and business performance. Those representations were crucial because assessing Blue Sky's value required data that was accessible only to Venter, without visibility for Nofar US. D.I. 23 ¶¶ 20-31.

After becoming Blue Sky's majority holder and gaining access to its records, Nofar US learned that Venter committed fraud and grossly overstated Blue Sky's value by providing false information regarding financials, performance, and indebtedness. He did so to induce Nofar US to overpay for a majority interest in Blue Sky. Venter knew his representations were false, yet he made them anyway to inflate the purchase price and boost his personal gain. *Id.* ¶¶ 44-66. In December 2023, Nofar US timely issued a Claim Notice to Venter and BS1007 notifying them of their liability under the MIPA. *Id.* ¶ 38; D.I. 28, Ex. 8. On May 3, 2024, knowing that Nofar US intends to sue, Venter and his wholly-owned entities sued Nofar US under the MIPA in California. *Id.* ¶ 13.

In the interim, since at least February 2024, Venter has been causing BPi—Blue Sky's largest construction contractor, which Venter owns—to bombard Blue Sky with a barrage of arbitrary payment demands, notices of default, and mechanic's liens. *Id.* ¶¶ 74-77. On June 26, 2024, Venter filed a declaration in open court in support of BPi's claims against Blue Sky, sharing confidential information the disclosure of which is prohibited under the MIPA. Venter is taking these adverse actions to diminish the value of Blue Sky, seeking to exert pressure on Nofar US to "buy him out" so he could secure another windfall. *Id.* ¶¶ 70-73.

## ARGUMENT

### I. THE LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure (the "Rules") absent an evidentiary hearing, a plaintiff "need only establish a *prima facie* case of personal jurisdiction." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009). The "court is required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003). The "court[] may rely upon matter outside the pleadings in determining jurisdictional facts." *Seegar v. Anticola*, No. 13-2030-LPS, 2015 WL 1149537, at *3 (D. Del. Mar. 12, 2015).

To survive a motion to dismiss under Rule 12(b)(6), a complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court is "required to accept as true all allegations in the complaint and all reasonable inferences…in the light most favorable to the nonmovant." *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 (3d Cir. 2014) (citation omitted). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000) (citation omitted).

### II. VENTER VENTURES AND VENTER TRUST ARE SUBJECT TO JURISDICTION

Venter Ventures is estopped from arguing that it is not bound by the MIPA's dispute-resolution provision, which includes submission to personal jurisdiction in this Court. *See* D.I. 23, Exs. 1-2 at § 13.2. That is because Venter Ventures has consistently invoked the MIPA by bringing a claim arising thereunder against Nofar US in the Napa Superior Court in California (the "Napa Court") on May 3, 2024, and then filing an amended complaint with that exact same claim on September 18, 2024 (the "Napa MIPA Claim"). D.I. 23 ¶ 13. It is well-established in both

Delaware and the Third Circuit that "[a] non-signatory to a contract will be estopped from arguing that a dispute-resolution provision does not apply when the non-signatory 'consistently maintain[s] that other provisions of the same contract should be enforced to benefit him.'" *Aveta Inc. v. Cavallieri*, 23 A.3d 157, 182 (Del. Ch. 2010) (citing *E.I. DuPont de Nemours v. Rhone Poulenc Fiber & Resin Intermediates*, 269 F.3d 187, 200 (3d Cir. 2001)); *BE&K Eng'g Co. v. RockTenn CP*, 2013 WL 5775403 (Del. Ch. Sept. 27, 2013) ("It is established under our law that if you seek to invoke an agreement, you cannot pick and choose the provisions of that agreement.").

Seeking to avoid the jurisdictional consequences of Venter Ventures' actions, Defendants repeatedly misrepresent to this Court that only Mr. Venter sued Nofar US in the Napa Court. *See*, *e.g.*, D.I. 27. ¶ 3 (stating that "***Mr. Venter*** filed a lawsuit against Nofar USA" and referring to "the lawsuit ***Mr. Venter*** filed in Napa County Court") (emphases added); *id*. ¶ 4 (same); D.I. 26 at 1-2, 18 (same). In fact, as the evidence shows, Venter Ventures was a plaintiff who filed the Napa MIPA Claim. D.I. 27, Ex. 1; Goor Decl., Ex. A. Elsewhere in the Motion, Defendants directly admit that "Venture Ventures…brought" the Napa MIPA Claim. D.I. 26 at 19. By filing and repeatedly seeking to prosecute the Napa MIPA Claim, Venter Ventures has consented to personal jurisdiction in this Court. It may not "pick and choose" to be bound only by those portions of the MIPA that serve its interests. *BE&K Eng'g*, 2013 WL 5775403 ("[defendant] consented and may be bound by the forum selection clause by virtue of its having invoked the Delaware law agreement in the Georgia action"); *Aveta*, 23 A.3d at 182 (non-signatory bound by Delaware dispute-resolution clause and "cannot have it both ways" after suing under the agreement in Puerto Rico).

For the same reasons and based on the same authorities, Nofar US has sufficiently alleged that the Court has personal jurisdiction over the Venter Trust. In an opposition to Nofar US's motion to dismiss the Napa MIPA Claim, Venter represented that "[t]his case is brought by Barend

Venter ***and the Venter Family Trust***." Goor Decl., Ex. B at 2 (emphasis added). That court filing then defined Mr. Venter and the Venter Trust "collectively" as "Venter" and stated that "Venter" seeks damages from Nofar US under the MIPA. *Id*. Mr. Venter controls the Venter Trust (D.I. 28 ¶ 1) such that his statements in court filings that the Venter Trust is suing Nofar US under the MIPA is sufficient to support a *prima facie* showing of consent to personal jurisdiction. *Supra* at 4-5. Alternatively, given the uncertainty created by Venter's conflicting statements, Nofar US moves to undertake limited jurisdictional discovery regarding Venter Ventures and the Venter Trust. *See Rocke v. Pebble Beach Co.*, 541 F. App'x 208, 212 (3d Cir. 2013) ("unless a plaintiff's claim is clearly frivolous, jurisdictional discovery should be allowed.")

## III. THE FRAUD CLAIMS ARE SEPARATE AND DISTINCT FROM THE BREACH-OF-CONTRACT CLAIMS AND SUFFICIENTLY PLED (COUNTS I AND III)

### A. The Fraud Claims Pertain to Intentional Conduct and Pre-Signing Inducement

Defendants cite a single case in support of their argument that Nofar US's claims for fraud (Count I) and fraudulent inducement (Count III) should be dismissed because they "are based only on a purported breach of the MIPA" and not an "independent duty." D.I. 26 at 7 (citing *ITW Glob. Invs. Inc. v. Am. Indus. Partners Cap. Fund IV*, 2015 WL 3970908, at *6 (Del. Super. Ct. June 24, 2015)). But even the one case Defendants cite directly rejected their theory. As here, the fraudulent inducement claim in *ITW* "relate[d] to misrepresentations about the Financial Statements occurring ***before*** the closing." *Id.* (emphasis in original). The *ITW* court denied a motion to dismiss the claim, reasoning that "[a]llegations that are focused on ***inducement*** to contract are 'separate and distinct' conduct." *Id*. (cited in D.I. 26 at 7) (emphasis in original).

Defendants' inability to muster a single case that actually supports their bootstrapping argument is unsurprising, because that is not the law. It is well-settled in Delaware that fraud and breach of contract claims will coexist where, as here, "the plaintiff alleges the seller knowingly

made false contractual representations" or "the conduct occurs prior to the execution of the contract and thus with the goal of inducing the plaintiff's signature and willingness to close on the transaction." *Levy Fam. Invs., LLC v. Oars + Alps LLC*, 2022 WL 245543, at *8 (Del. Ch. Jan. 27, 2022) (citation omitted). In such cases, the agreement "is not the source of [the] fraud claim, but rather the instrument by which [defendant] perpetrated" the fraud. *Narrowstep, Inc. v. Onstream Media Corp.*, 2010 WL 5422405, at *15 (Del. Ch. Dec. 22, 2010); *see also Swipe Acquisition Corp. v. Krauss*, 2020 WL 5015863, at *11 (Del. Ch. Aug. 25, 2020) ("the anti-bootstrapping rule does not apply where a plaintiff has made particularized allegations that a seller knew contractual representations were false or lied regarding the contractual representation").

Nofar US's fraud claims rely on detailed allegations that Venter and BS1007 (and, by implication, the remaining Defendants who act as BS1007's successors-in-interest) knowingly and deliberately made false contractual representations and acted fraudulently prior to the signing of the MIPA to induce Nofar US to close the transaction. D.I. 23 ¶¶ 44-66, 78-88, 100-109. Delaware courts refuse to dismiss fraud claims as impermissible bootstrapping where, as here, the plaintiff-buyer "point[s] to specific misrepresentations by [the defendant-seller] including misrepresentations about the sales results and financial condition of the [acquired company] made ***before*** the [e]xecution of the [purchase agreement]." *Osram Sylvania Inc. v. Townsend Ventures, LLC*, 2013 WL 6199554, at *16 (Del. Ch. Nov. 19, 2013) (emphasis in original); *Rheault v. Halma Holdings Inc.*, 2023 WL 8005318, at *5 (D. Del. Nov. 7, 2023) ("Even though [plaintiff's] fraud and breach claims overlap to some degree, the fraud claim is distinct from the breach claim, because [plaintiff] sufficiently pleaded that [defendant] engaged in fraudulent inducement by making representations regarding the [purchase agreement] without disclosing material facts[.]").

Indeed, "[c]laims for fraud can coexist with claims for breach of contract where a defendant committed intentional fraud, or acted with an illicit state of mind, in the sense that the Seller knew that the representation was false and either communicated it to the Buyer directly itself or knew that the Company had." *Livery Coach Sols. v. Music Express/E*, 245 F. Supp. 3d 639, 645 (D. Del. 2017). The FAC sufficiently alleges the same. Defendants' cursory effort to deal with this settled authority is reduced to the baseless assertion that "the FAC's claim for fraud is based entirely on defendants' purported refusal to indemnify Nofar USA." D.I. 26 at 8. That is incorrect. The fraud claims are based on deceitful contractual misrepresentations; they have nothing to do with Defendants' post-signing failures to perform under the MIPA. D.I. 23 ¶¶ 44-66, 78-88, 100-109.

Finally, the MIPA's integration clause is no bar to the fraud claims because it does not disclaim reliance. D.I. 26 at 9, 10 n.2 (citing MIPA § 13.4). Delaware courts "will not give effect to so-called merger or integration clauses that do not clearly state that the parties ***disclaim reliance*** upon extra-contractual statements." *Anvil Holding Corp. v. Iron Acquisition*, 2013 WL 2249655, at *8 (Del. Ch. May 17, 2013) (emphasis in original). In *Anvil*, the court analyzed an integration provision ***effectively identical*** to MIPA § 13.4 and found it insufficient to "bar a claim for fraud." *Id*. The only case Defendants cite on this point does not hold otherwise. *Trifecta Multimedia Holdings v. WCG Clinical Servs.*, 318 A.3d 450 (Del. Ch. 2024) (cited in D.I. 26 at 9) ("a standard integration clause alone will not bar a fraudulent inducement claim")

**B. <u>The Fraud Claims Seek Different Damages from the Breach of Contract Claims</u>**

Defendants wrongly argue that the fraud claims should be dismissed because they "seek the same damages as the contract claim." D.I. 26 at 9-10. That argument fails on its face because the MIPA contains an indemnification cap of $6 million on the damages Nofar US may recover for breach of contract, but expressly provides that damages for fraud, intentional misrepresentations, and willful breach are not capped and "shall not be limited." D.I. 23 ¶ 42; *id.*,

Exs. 1-2 at §§ 2.2, 7.2(a)(vi), 7.2(e)(ii). Where, as here, damages for breach of contract claims are capped but damages for fraud claims are uncapped, there is no duplication because the "[p]laintiff might be entitled to greater damages through its fraud claim than its breach of contract claim." *Swipe*, 2020 WL 5015863, at *12 (denying motion to dismiss fraud claim as duplicative); *see also Great Hill Equity Partners IV, LP v. SIG Growth Equity Fund, LLP*, 2020 WL 948513, at *12, *24 (Del. Ch. Feb. 27, 2020) (distinguishing "uncapped" fraud damages from contract damages "capped by the funds in escrow"); *Levy*, 2022 WL 245543, at *8 (no bootstrapping where damages for fraud claim are different from those for contract claim).

Delaware public policy mandates the same. "[T]o hold that Buyer can recover only capped damages for knowingly false contractual representations would be to countenance and immunize fraud." *Anschutz Corp. v. Brown Robin Cap., LLC*, 2020 WL 3096744, at *15 (Del. Ch. June 11, 2020); *Kainos Evolve, Inc. v. InTouch Techs., Inc.*, 2019 WL 7373796, at *3 (Del. Ch. Dec. 31, 2019) ("it would be premature to dismiss the fraud claim" because "it is quite possible that the measure of damages for the fraud claim would be different given the public policy against fraud"). Where, as here, "a seller intentionally misrepresents a fact embodied in a contract—that is, when a seller lies—public policy will not permit" limiting the buyer "to a capped damage claim. Rather, the buyer is free to press a claim for full compensatory damages." *Abry Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1036 (Del. Ch. 2006). The sought damages are no basis for dismissal of the fraud claims as duplicative.

### C. <u>The Fraud Claims Satisfy Federal Rule 9(b)</u>

Under Rule 9(b), a party alleging fraud must state the circumstances constituting the fraud with particularity. The FAC's fraud claims satisfy this burden. "When a party sues based on a written representation in a contract, as [Nofar US] has done here, it is relatively easy to plead a particularized claim of fraud" because:

> The plaintiff can readily identify who made what representations where and when, because the specific representations appear in the contract. The plaintiff likewise can readily identify what the defendant gained, which was to induce the plaintiff to enter into the contract. Having pointed to the representations, the plaintiff need only allege facts sufficient to support a reasonable inference that the representations were knowingly false.

*Prairie Cap. III, L.P. v. Double E Holding Corp.*, 132 A.3d 35, 62 (Del. Ch. 2015). "Generally, it may be said that an allegation of fraud is legally sufficient under Rule 9(b) if it informs defendants of the precise transactions at issue, and the fraud alleged to have occurred in those transactions, so as to place defendants on notice of the precise misconduct with which they are charged." *Roma Landmark Theaters v. Cohen Exhibition Co.*, 2020 WL 5816759, at *14 (Del. Ch. Sept. 30, 2020).

The FAC meets this burden. Venter and BS1007 are, respectively, a Founder and a Selling Party under the MIPA. They made the misrepresentations underlying the fraud claims "jointly and severally," and cannot claim lack of notice of the "who, what, when, where, and how." D.I. 26. at 9-10; D.I. 23 ¶¶ 11-12, 39. Venter Ventures and the Venter Trust are, in turn, entities wholly-owned and controlled by Venter who invoked the MIPA in litigation as Founders or Selling Parties (*supra* at 4-6) and similarly cannot disclaim notice. The FAC makes particularized allegations identifying the bases of the fraud claims within the MIPA. D.I. 23 ¶¶ 23-66. It also alleges that the representations' falsity was known or knowable, which can "be alleged generally" under Rule 9(b). Faced with similar allegations, this Court held that a plaintiff "adequately allege[d] fraud in connection with the…warranties and representations in the MIPA." *Infinity Lab'y Grp. Inc. v. Odegard*, 2022 WL 17978274, at *3 (D. Del. Dec. 28, 2022) (Hall, J.), *report and recommendation adopted*, 2023 WL 172236 (D. Del. Jan. 12, 2023); *see also Abry*, 891 A.2d at 1051 (plaintiff-buyer satisfied Rule 9(b) by "alleg[ing], with specificity, precisely what financial statements were materially false and why they were false. These financial statements were represented and warranted in the Agreement and were therefore intended to induce[.]"). The same applies here.

**IV. THE FAC STATES A NEGLIGENT MISREPRESENTATION CLAIM (COUNT IV)**

As with the fraud claims, Defendants' sole basis for dismissal of the negligent misrepresentation claim (Count IV) is that the FAC "fails to allege any independent duty apart from the MIPA." D.I. 26 at 8. That argument fails. The FAC sufficiently alleges that Venter had a pecuniary duty because "he made the representations at issue in the course of a business transaction in which he had a pecuniary interest." D.I. 23 ¶ 113. "A fiduciary duty is not required to state a claim for negligent misrepresentation." *Lieberman v. BeyondTrust Corp.*, 2020 WL 1815547, at *4 (D. Del. Apr. 9, 2020). Instead, it is sufficient to allege a "pecuniary duty," which arises where a defendant makes representations "in the course of a business transaction in which that party has a pecuniary interest." *Id*; *see also Vichi v. Koninklijke Philips Elecs*, 85 A.3d 725, 763 (Del. Ch. 2014) ("[T]o succeed on a negligent misrepresentation claim, a plaintiff must show that the source of the allegedly misleading information was a defendant who expected to profit from the course of conduct in which he provided the information, such that he could reasonably be expected to take reasonable care in providing that information.") (cleaned up); *Underwood v. Benefit Express Servs*., 2018 WL 6819003, at *5 (D. Del. Dec. 28, 2018) ("Plaintiffs sufficiently pled…that the business relationship between the parties in negotiating the APA created a pecuniary duty sufficient to allege negligent misrepresentation.") The FAC establishes that Venter had a pecuniary interest in the sale and thus a pecuniary duty, negating the notion that the FAC does not "allege any independent duty[.]" D.I. 26 at 8; D.I. 23 ¶ 113.

Defendants' duplication argument further fails for the same reasons stated *supra* at 6-9 regarding the fraud claims. Because the FAC "state[s] a claim for fraud arising from Sellers' alleged manipulation and concealment of financial information in the period leading up to the Effective Date," the FAC has also "pled all of the elements of negligent misrepresentation, except for the lesser scienter requirement." *Osram*, 2013 WL 6199554, at *16 (denying motion to

dismiss). Defendants again falsely argue that the negligent misrepresentation claim is based "only" on "violations of the MIPA and [Venter's] obligation to 'maintain in confidence' certain information." D.I. 26 at 9. Defendants are wrong. The FAC does ***not*** allege that Venter is liable for negligent misrepresentation because he failed to perform under the MIPA. Rather, as the FAC alleges, Venter is liable for negligent misrepresentation because of his misrepresentations in the MIPA, as well as before the sale and during due diligence. D.I. 23 ¶¶ 44-64, 110-114.

## V. THE FAC STATES BREACH OF CONTRACT CLAIMS (COUNT II, VI)

### A. The FAC States a Claim for Misrepresentations Under the MIPA (Count II)

The Breach of Contract Claim for Indemnification (Count II) is sufficiently pled with respect to each breached representation and warranty. D.I. 23 ¶¶ 22-31, 45-66.

#### *1. The Financial Models are Incorporated in the MIPA*

Defendants do not challenge the sufficiency of the FAC's allegations regarding misrepresentations in the Financial Models, nor could they. D.I. 23 ¶¶ 24-25, 45-54. Instead, Defendants argue only that there are "no financial models" in the MIPA because they are only "referenced" and not "incorporated." D.I. 26 at 11-12. This wishful magic solution fails because the Financial Models ***are*** part of the MIPA and incorporated therein. Section 3.7(g) provides that the Financial Models are "attached hereto as Schedule 3.7(g)" and "reflect a good faith estimate of the anticipated revenues and costs[.]" D.I. 23 ¶ 25. MIPA Schedule 3.7(g), in turn, incorporates the Financial Models contained in the deal data room by stating that "[r]eference is made to the financial models provided in the data room prior to the date of the Agreement." *Id.* In Section 3.7(h), the parties premised yet another contractual representation on the Financial Models, this time concerning tariff data. D.I. 23 ¶ 26; *id.,* Exs. 1-2 at § 3.7(h). The Financial Models are easily ascertained because, under MIPA § 1.2(a), documents uploaded to the data room may "***not***

***removed therefrom at any time thereafter***." D.I. 23 ¶ 25 (emphasis added); *id.*, Exs. 1-2 at § 1.2(a). There is thus, by design, no issue identifying the Financial Models.

Sections 1.2(a), 3.7(g), (h) and Schedule 3.7(g), "read as a 'whole,'" reflect incorporation by reference because the MIPA "refers to another instrument"—here, the Financial Models—"and makes the conditions of such other instrument a part of it" by coupling it with specific contractual duties. *Vortex Infrastructure Holdco LLC v. Kane*, 2024 WL 3887117, at *4 (Del. Ch. Aug. 21, 2024) (citing *Town of Cheswold v. Cent. Del. Bus. Park*, 188 A.3d 810 (Del. 2018)); *see also Exit Strategy v. Festival Retail Fund BH*, 2023 WL 4571932, at *13 (Del. Ch. July 17, 2023) (document was incorporated because it "is not merely referenced; it is defined in the [agreement]" and "regulates some of the [agreement's] terms."). At a minimum, the MIPA's "repeated reference" to the Financial Models is a sufficient "indicia that the parties intended to incorporate" them. *DuPont de Nemours, Inc. v. Hemlock Semiconductor Operations LLC*, 2024 WL 3161799, at *10 (Del. Super. June 10, 2024); D.I. 23 ¶¶ 24-26; *id.* Exs. 1-2 at §§ 3.7(g), (h), Schedule 3.7(g).

The "Financial Models," as defined in the MIPA, are thus a finite set of time-stamped financial exhibits that resided in the data room as of the execution date. D.I. 23 ¶ 25. The parties dedicated two special representation and warranty provisions and a schedule to the Financial Models, pointing to their specific location and prohibiting their removal therefrom. D.I. 23 ¶ 25; *id.* Exs. 1-2 at §§ 1.2(a), 3.7(g), (h) Schedule 3.7(g). That is a readily apparent manifestation of an intent to incorporate. *Town of Cheswold*, 188 A.3d at 819. Defendants cannot erase the Financial Models just because the parties used the term "attached" but then instead incorporated the documents by "reference." D.I. 26 at 11-12. That is nothing more than a "gotcha" tactic. Adopting Defendants' illogical interpretation would also render MIPA §§ 3.7(g), (h) and Schedule 3.7(g) entirely "meaningless or illusory," contrary to the bedrock of Delaware contract

construction jurisprudence. *Manti Holdings v. Authentix Acquisition Co.*, 261 A.3d 1199, 1208 (Del. 2021).[2]

***2. The FAC States a Claim for Misrepresentation of Subscription Rates***

Section 3.7(i) of the MIPA is a representation that if the electricity subscription rate of any Blue Sky project is below 125%, the same shall be disclosed on Schedule 3.7(i). D.I. 23 ¶¶ 27, 55-57. The FAC contains detailed allegations naming six projects listed on Schedule 3.7(i) with purported rates above 125%, when in reality their subscription rates fell well below 125%. *Id.* ¶ 56-57. Accordingly, the FAC alleges that the representation in Section 3.7(i) was breached with respect to each of those six projects. That is because those projects had a subscription rate below 125% but the same was not disclosed on Schedule 3.7(i), as required by Section 3.7(i). *Id.* ¶ 57. Instead, Schedule 3.7(i) misrepresented that the rates for each of those six projects were above 125%. *Id*. Defendants misunderstand this claim. They incorrectly state that "[t]o be false…, there must be a project ***not included*** on Schedule 3.7(i) with subscription rates at or below 125%[.]" D.I. 26 at 12-13 (emphasis in original). Defendants miss the point, which is that a misrepresentation also occurs when Schedule 3.7(i) does include a project but falsely states that its rate is above 125%. D.I. 23 ¶ 57. Defendants offer no argument on point.

***3. The FAC States a Claim for Breach of the Financial Statements Representation***

The FAC alleges with detail that the Financial Statements were not compliant with the representations in MIPA §§ 3.13(a), (c). D.I. 23 ¶¶ 58-61. Defendants' response is that "they were," even if "Nofar USA believes that the financial statements were not 100% accurate." D.I. 26 at 13. They further argue that the MIPA only requires "commercially reasonable efforts" and

[2] Even if MIPA §§ 3.7(g), (h) and Schedule 3.7(g) were ambiguous on incorporation, the Court "cannot choose between two differing reasonable interpretations of ambiguous provisions" at the motion to dismiss stage. *AJZN, Inc. v. Yu*, 2015 WL 331937, at *7 (D. Del. Jan. 26, 2015).

"[t]hat was done here[.]" *Id.* at 14. Defendants' assertions raise nothing more than "disputed factual issues" that the Court "cannot resolve…on a motion to dismiss." *Cipla USA, Inc. v. Ipsen Biopharmaceuticals, Inc.*, 2024 WL 307699, at *5 (D. Del. Jan. 26, 2024), *report and recommendation adopted*, 2024 WL 3326824 (D. Del. Feb. 21, 2024); *see also Flora v. Cnty. of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015) (on a motion to dismiss, "[t]he district court may not make findings of fact and, insofar as there is a factual dispute, the court may not resolve it.").

Glossing over the FAC's detailed allegations, Defendants supplement their factual disputes with a cursory argument that the FAC does not "allege what exactly" was wrong with the Financial Statements. D.I. 26 at 14. But the FAC makes specific allegations of manipulation and inaccuracies concerning the Financial Statements, including that the "total amount of outstanding Liabilities as of June 30, 2021 omitted Liabilities amounting to $1,294,353"; that the difference between Blue Sky's accounts receivable and accounts payable was off by more than $3 million; and that Blue Sky's equity was off by nearly $17 million "due to overinclusion of assets and undisclosed Indebtedness." D.I. 23 ¶ 59-66. The FAC even contains concrete evidence of the culture of fabricating financial records by Venter and others working under his direction, including an email from Blue Sky's then-CFO and an apparently forged financial statement which is far cry from GAAP compliance. *Id.* ¶¶ 60-61. That is more than enough to meet the pleading requirement.

*Osram* is instructive. There, the Court of Chancery found that a plaintiff sufficiently alleged a breach of a representation substantively identical to the one in MIPA § 3.13(a), explaining that "[t]aking [plaintiff's] well-pled factual allegations as true, it is reasonably conceivable that [plaintiff] could succeed in demonstrating that Sellers' inflation of sales, financial manipulation, and modification of the Company's business segments resulted in financial statements that were not 'correct and complete' and did not 'fairly present the financial condition'

of the Company, thereby breaching" the representation in the purchase agreement. *Osram*, 2013 WL 6199554, at *7. Like the FAC, the plaintiff in *Osram* presented an email indicative of financial manipulation and alleged that the defendant-seller inflated performance data, held back invoices, and "attempted to manipulate the financial condition of the Company." *Id*. at *2. The FAC makes strikingly similar allegations and it too states a claim for a breach. D.I. 23 ¶¶ 44-66; *id.* Exs. 1-2 at § 3.13(a).

### ***4. The FAC States a Claim for Misrepresentation of Company Indebtedness***

Defendants do not argue that the FAC's allegations regarding the Company Indebtedness representation and warranty are short on detail, nor could they. The FAC specifically alleges that Venter misrepresented that Schedule 3.13(d) was an accurate and complete list of all Company Indebtedness, because Venter omitted from that list more than $3.7 million in invoices Blue Sky owed to Venter's other company, BPi. D.I. 23 ¶¶ 62-65. Defendants' only response is that Blue Sky's invoice debt to BPi does not constitute Company Indebtedness under the MIPA. D.I. 26 at 14-15. That is incorrect. The FAC sufficiently alleges that the BPi debt could fit in one or more categories of Company Indebtedness, including the catch-all provision covering "any other amounts owing in respect of the items described in the foregoing clauses." D.I. 23 ¶ 62.

Further, Defendants refer to BPi as a "vendor" and argue that debt to vendors is not Company Indebtedness, but ignore the FAC's documented allegation that Schedule 3.13(d) ***did disclose*** the invoice debt owed to multiple vendors, conveniently omitting BPi. *Id.* ¶ 62. Even if Defendants were correct that Company Indebtedness as defined in the MIPA does not encompass the BPi debt (which is an issue for trial), the parties' course of conduct modified that definition to include vendors. *Kuramo Cap. Mgmt. v. Seruma*, 2024 WL 1888216, at *36 (Del. Ch. Apr. 30, 2024) ("A court may find that the parties modified their obligations…by conduct[.]") (cleaned up). Defendants do not deny that Venter listed multiple vendors on Schedule 3.13(d). By including

multiple vendors but self-servingly omitting millions of dollars owed to the one vendor he personally owns, Venter misrepresented to Nofar US that all outstanding vendor debt has been disclosed as Company Indebtedness, in breach of MIPA § 3.13(d). D.I. 23 ¶¶ 62-65. Even if there were ambiguity as to the duty to disclose the BPi debt, the Court "cannot choose between two differing reasonable interpretations of ambiguous provisions" at the motion to dismiss stage (*AJZN*, 2015 WL 331937, at *7), nor can it resolve disputes facts. *Flora*, 776 F.3d at 175.

### B. <u>All Defendants are Liable for Indemnification (Count II)</u>

Defendants concede that Count II can "proceed against…Mr. Venter" but argue that it cannot proceed against the other Defendants. D.I. 26 at 15. They argue that Count II cannot proceed against BS1007 because Nofar US's "claim notice and indemnification demand was made ***only*** to Mr. Venter." *Id*. at 16 (emphasis in original). That argument is refuted by the copy of the claim notice Defendants attached to their Motion, which states in no uncertain terms that Nofar US "hereby delivers" the claim notice to "Venter," after defining the term "Venter" as "Mr. Barend Venter, ***in his capacity as sole member of Blue Sky 1007***." *See* D.I. 28, Ex. 8 at 1 (emphasis added). The claim notice further states that it was delivered both to Mr. Venter personally and BS1007. *Id*. at 2. The indemnification demand was therefore made to both Venter personally and BS1007, respectively a Founder and Selling Party under the MIPA, who "jointly and severally" made each of the representations and warranties at issue in Count II. D.I. 23 ¶¶ 8, 12, 38-39.

Next, for the same reasons discussed *supra* at 4-6, Venter Ventures and the Venter Trust are estopped from disclaiming liability under the MIPA on the basis that they are "non-parties." D.I. 26 15-16. "Equity will not allow a party to sue to enforce the provisions of a contract that it likes, while simultaneously disclaiming the provisions that it does not." *Town of Smyrna v. Kent Cnty. Levy Ct.*, 2004 WL 2671745, at *4 (Del. Ch. Nov. 9, 2004). At a minimum, the FAC's allegations "raise a reasonable expectation that discovery will reveal evidence" that, by exercising

rights under the MIPA against Nofar US as Founders or Selling Parties, Venter Ventures and the Venter Trust assumed the MIPA indemnification liabilities, which is sufficient to survive a motion to dismiss. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009); D.I. 23 ¶¶ 13-14.

### C. <u>The FAC States a Claim for Breach of Confidentiality Obligations (Count VI)</u>

Section 6.5 of the MIPA prohibits Venter from disclosing Blue Sky's Confidential Information and Know-How. D.I. 23 ¶¶ 33-34. The FAC contains detailed allegations regarding Venter's breach of that duty by publicly disclosing protected information in a personal declaration he filed in the Napa Court, as part of litigation between Blue Sky and Venter's other company, BPi. *Id*. ¶¶ 70-73. Defendants do not contest that Venter is bound by Section 6.5 or that he filed the declaration at issue. D.I. 26 at 17-18. All Defendants argue is that the information Venter publicly disclosed "is the ***type*** that Nofar USA makes publicly available." *Id* (emphasis added). That argument fails. The Motion does not state (nor could it) that the public material attached as Ex. 6 to the Leventhal Decl., or any other public material, contains the following information which Venter impermissibly disclosed as alleged in the FAC: "sensitive internal dealings and processes"; "ability to compete in the marketplace and offer competitive terms to customers"; "available financing"; "hurdle rate"; and non-public business affairs. D.I. 23 ¶ 72. The FAC's "allegations clearly identify information falling within the purview of 'Confidential Information' as defined in the [MIPA]." *In re DBSI, Inc.*, 468 B.R. 663, 671 (Bankr. D. Del. 2011) (denying motion to dismiss similar breach of contract claim). At best, the Motion raises a factual question as to whether the protected information in Venter's declaration was publicly disclosed by others. The Motion points to no such disclosure and, in any event, that factual question cannot be resolved on a motion to dismiss. *Flora*, 776 F.3d at 175. The FAC "raise[s] a reasonable expectation that discovery will reveal evidence" that Venter breached MIPA § 6.5, which is sufficient to survive a motion to dismiss. *Fowler*, 578 F.3d at 213.

## VI. THE IMPLIED COVENANT IS PROPERLY PLED (COUNT V)

As is relevant here, "[i]n order to plead successfully a breach of an implied covenant of good faith and fair dealing, the plaintiff must allege a specific implied contractual obligation[.]" *Cantor Fitzgerald, L.P. v. Cantor,* 1998 WL 842316, at *1 (Del. Ch. Nov. 10, 1998). Nofar US has done so. It expressly alleges that "[h]ad the parties to the MIPA expressly addressed the issue, they would have agreed that Venter would not cause BPi—a company he owns and controls—to undertake actions to harm Blue Sky and undermine its value[.]" D.I. 23 ¶ 120. Defendants' ground for dismissal of Count V is this element, *i.e.*, the purported absence of "a specific implied contractual obligation[.]" D.I. 26 at 17. That argument fails on its face because the FAC does, in fact, expressly include such an allegation, though Defendants choose to ignore it. D.I. 23 ¶ 120. Nor would Venter's violation of the implied duty be governed by the "lease agreements" between Blue Sky and BPi, as Defendants baselessly suggest. D.I. 26 at 16. Neither Nofar US nor Venter are privy to those agreements and they impose no duty on Venter, let alone one similar to the implied duty alleged in the FAC. *Id.* ¶ 120.

## VII. THE ALTERNATIVE REQUEST FOR A STAY SHOULD BE DENIED

Defendants' alternative request to stay this action in favor of the Napa Court ignores the elephant in the room: a Delaware forum selection clause. It is the law of the land that "[w]hen parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 66 (2013). "In all but the most unusual cases, therefore, 'the interest of justice' is served by holding parties to their bargain." *Id.* This case is no exception.

*Ingres Corp. v. CA, Inc.* is instructive. 8 A.3d 1143 (Del. 2010). There, as here, the defendant brought the first-filed action in California and the plaintiff brought the second-filed action in Delaware. The Supreme Court of Delaware affirmed the trial court's denial of a request

for a stay in favor of the California action, holding that "where contracting parties have expressly agreed upon a legally enforceable forum selection clause, a court should honor the parties' contract and enforce the clause[,]" and refuse requests to stay the litigation in the selected forum absent a clear showing "that the clause was unreasonable, unjust, or otherwise invalid." *Id*. at 1145-47. Here, Defendants do not argue before this Court that the forum selection clause is "unreasonable, unjust, or otherwise invalid." *Id*. They have forfeited their right to do so for the first time in their reply. That is sufficient to dispose of Defendants' request to stay this action.

While the Court need not reach this issue, each of the three prongs discussed in the Motion weigh against a stay. D.I. 26 at 19-20. *First*, Venter and Venter Ventures' MIPA claim has made zero progress since it was filed and the pleadings are far from being settled. On October 30, 2024, the Napa Court continued the first case management conference to February 20, 2025, noting that the parties are "just right at the beginning of this case[.]" Goor Decl., Ex. C at 13:21-14-9.

*Second*, while it is no basis for a stay either way, Nofar US's claims could only plausibly be considered compulsory crossclaims under California law after Nofar US ***files an answer*** to the Napa MIPA claim, which will not happen any time soon, if at all. *See* Cal. Code Civ. P. § 426.30(b)(2). *Third*, Venter and Venter Ventures filed the Napa MIPA Claim in breach of a "presumptively valid and vigorously enforced" Delaware forum selection clause, where the parties agreed not to bring suit outside of Delaware. *PPL Corp. v. Riverstone Holdings LLC*, 2019 WL 5423306, at *6 (Del. Ch. Oct. 23, 2019); D.I. 23, Exs. 1-2 at § 13.2(d). They did so in May 2024, while on notice since 2023 that Nofar US intends to sue them. D.I. 28, Ex. 8. They should not be rewarded for rushing to sue in another forum. Delaware courts "do[] not countenance such tactics when they are employed to defeat bargained-for rights." *PPL Corp.*, 2019 WL 5423306, at *8.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion.

*/s/ Michael A. Barlow*
Michael A. Barlow (#3928)
Veronica B. Bartholomew (#6224)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
500 Delaware Avenue, Suite 220
Wilmington, Delaware 19801
(302) 302-4000
michaelbarlow@quinnemanuel.com
veronicabartholomew@quinnemanuel.com

*Attorneys for Plaintiff Nofar USA LLC*

OF COUNSEL:

Michael B. Carlinsky
Yehuda Goor
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000
michaelcarlinsky@quinnemanuel.com
yehudagoor@quinnemanuel.com

David M. Grable
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
(213) 443-3000
davegrable@quinnemanuel.com

DATED: November 22, 2024