**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| NOFAR USA LLC,<br><br>Plaintiff,<br><br>v.<br><br>BAREND VENTER, VENTER VENTURES LLC, BLUE SKY 1007 LLC, and THE VENTER FAMILY REVOCABLE TRUST,<br><br>Defendants. | Case No. 1:24-cv-00870-JLH |

**DEFENDANTS' REPLY TO PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS <u>PLAINTIFF'S FIRST AMENDED COMPLAINT</u>**


Laura Davis Jones (DE Bar No. 2436)
Peter J. Keane (DE Bar No. 5503)
Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
Phone: (302) 652-4100
Email: ljones@pszjlaw.com
pkeane@pszjlaw.com

-and-

Michael Cypers (*pro hac vice*)
Joseph Leventhal (*pro hac vice*)
Wogai Mohmand (*pro hac vice*)
Glaser Weil Fink Howard Jordan & Shapiro LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, CA 90067
Phone: (310) 553-3000
Email: mcypers@glaserweil.com
jleventhal@glaserweil.com
wmohmand@glaserweil.com

*Attorneys for Defendants Barend Venter, Venter Ventures LLC, Blue Sky 1007 LLC, and The Venter Family Revocable Trust*

Defendants Barend Venter, Venter Ventures LLC, Blue Sky 1007 LLC, and The Venter Family Revocable Trust (collectively, the "Defendants") hereby respectfully reply to Plaintiff Nofar USA, LLC (the "Plaintiff" or "Nofar USA")'s answering brief in opposition to Defendants' motion to dismiss Plaintiff's First Amended Complaint.

## I. <u>PRELIMINARY STATEMENT</u>

Since the filing of Defendants' Motion to Dismiss and this Reply in Support of the Motion to Dismiss, the California Court of Appeal published a critical decision that altered the procedural posture of the related Napa County action. As discussed in more detail below, the California Court of Appeal ruled that a unilateral proposed agreement by one side not to enforce a jury trial waiver by one party to a contract is unenforceable. The Napa Court thereafter vacated its previous decision granting Nofar USA's motion to dismiss subject to Nofar's stipulation to not enforce a jury trial waiver. The Napa Court set a hearing to reconsider its order to December 18, 2024, and the parties have stipulated to extend that date to January 14, 2025.[1] Because of the Napa Court's vacating its decision, the claims in this dispute necessarily become compulsory counterclaims in the Napa County action. As such, this action must be dismissed in its entirety, or, in the alternative, stayed until after the Napa Court's decision.

## II. <u>ARGUMENT</u>

### A. <u>The California Court of Appeal Decision and Subsequent Order by the Napa County Court</u>

The Court should dismiss all of Nofar USA's claims because recent California appellate law makes it clear these are compulsory counterclaims that must have been brought in Napa

[1] The parties to the Napa action are awaiting to learn the Napa Court's disposition of their stipulation.

Superior Court. As Nofar USA asserts, Mr. Venter and Venter Ventures brought a claim against Nofar USA in Napa, California ***under the MIPA*** before this action in Delaware commenced. (*See* Opp. to Motion at 4 (Venter parties "consistently invoked the MIPA by bringing a claim arising thereunder against Nofar US in the Napa Superior Court … on May 3, 2024…").) Although that claim in Napa was initially subject to the court's dismissal because of a Delaware venue provision, on November 14, 2024, California's appellate court issued an opinion in *The Comedy Store v. Moss Adams LLP*, No. B327404, 2024 WL 4783868, at *1 (Cal. Ct. App. Nov. 14, 2024). (Leventhal Reply Decl., ¶ 3, Ex. 1.) Therein, California's appellate court made it clear that a one-sided proposed agreement not to enforce a jury-trial waiver, as is the case here, is insufficient to dismiss or transfer a contract claim pursuant to that contract's venue provision. *Id.* at *8 ("we remand with instructions that the trial court vacate its order granting Moss Adams's motion to dismiss or stay the action based on improper venue and enter an order denying the motion.").)

As a result of this appellate opinion, on November 18, 2024, the Napa Court *sua sponte* issued an opinion reconsidering its previous order dismissing the MIPA claim and setting a hearing for December 18, 2024. (Leventhal Reply Decl., ¶ 4, Ex. 2 at 3.) Acknowledging the binding appellate opinion of *The Comedy Store*, the Napa Court stated that its "reasoning, in granting the motion to dismiss *subject* to Nofar's stipulation appears to be directly undermined by this holding [in *Comedy Store*]." *Id.*, Ex. 2 at 4 (emphasis in original). The parties to the Napa Court action thereafter stipulated to continue the December 18, 2024 hearing date to January 14, 2025. *Id.* ¶ 5, Ex. 3.

Because the Napa Court appears certain to deny Nofar USA's motion to dismiss the MIPA-related claims in the Napa Court (likely before this Court issues its ruling on this motion

to dismiss), all of Nofar USA's claims here are compulsory counterclaims and must be dismissed and re-filed in the Napa Court. The Federal Rules of Civil Procedure define a compulsory counterclaim as one which "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a)(1)(A). Delaware's Court of Common Pleas Civil Rules No. 13 parallels Fed. R. Civ. P. 13, stating that "[a] pleading shall state as a counterclaim any claim which at the time of serving the pleader has against any opposing party, if it ***arises out of the transaction or occurrence*** that is the subject matter of the opposing party's claim…" (emphasis added). This means that for claims under Delaware law, "[w]hen one party to a contract puts provisions of it at issue, ... all actions taken pursuant to that contractual relationship become part of the relevant transaction or occurrence." *MirTech Inc. v. AgroFresh Inc.*, 561 F. Supp. 3d 447, 458 (D. Del. 2021); *see also Pontone v. Milso Industries Corp.*, 100 A.3d 1023, 1056-57 (Del. Ch. 2014). The same is true even if the Napa Court finds that California law applies to the disputes between the parties. *See* Cal. Code of Civ. Proc. § 426.30 ("if a party against whom a complaint has been filed and served fails to allege in a cross-complaint any related cause of action…such party may not thereafter in any other action assert against the plaintiff the related cause of action not pleaded"); *see, e.g., Align Technology, Inc. v. Tran*, 179 Cal. App. 4th 949, 962 (2009) (stating rules related to the compulsory counterclaim statute "require[] that the entire contractual relationship be deemed to be included within the word 'transaction' in cases sounding in contract."). As such, Nofar USA will be forced to bring compulsory counterclaims in the Napa County action, making this entire action unnecessary, duplicative, and a waste of judicial resources.

### B. **<u>This Court Does Not Have Personal Jurisdiction Over Venter Ventures and Venter Family Trust</u>**

As is clear from the record, Venter Ventures did not "invoke" the MIPA in its claims in Napa. (First Amended Complaint, D.I. 23-2 ("FAC"), Ex. 3.) Instead, it brought a "fraud and concealment" claim that the *Napa Court*, not Venter Ventures, determined was sufficiently related to the MIPA that the venue provision would apply (although, as noted above, that ruling is being reconsidered). Specifically, Mr. Venter and Venter Ventures complained of conduct after the MIPA transaction. (D.I. 31, Declaration of Yehuda Goor ("Goor Decl."), Ex. A at ¶¶ 105-106.)

As to the Venter Family Trust, there is no dispute that it is not a party in the Napa action. Despite this, Nofar USA seeks to capitalize on a clearly inadvertent misstatement in a brief where counsel identified the Venter Family Trust instead of Venter Ventures. (*See* Goor Decl., Ex. B at 2:10 [stating "This case is brought by Barend Venter and the Venter Family Trust" when it indisputably was brought by Mr. Venter and Venter Ventures].) A scrivener's error in a motion cannot possibly be deemed to consent to personal jurisdiction.

In addition, the facts here are unlike the cases cited by Nofar USA.[2] For example, Nofar USA cites to *Aveta Inc. v. Cavallieri*, 23 A.3d 157 (Del. Ch. 2010) to assert that a non-signatory to a contract will be estopped from arguing that a dispute-resolution provision does not apply when that same non-signatory has sought to enforce other provisions of the same contract. (Opp. to Motion at 11.) Nofar USA, however, ignores that *Aveta* made this determination in the context

[2] Nofar USA's purported "motion" to take discovery in its opposition is procedurally improper. Regardless, Nofar USA fails to explain why it needs jurisdictional discovery. The entire basis on which it argues personal jurisdiction is contained in court filings and Nofar USA never argues any other basis to exercise jurisdiction over Venter Ventures or the Venter Family Trust.

of one party actively attempting to enforce an Agreement, and then violating the terms of a forum selection provision in that same agreement. *Aveta Inc.*, 23 A.3d at 181-82. The Napa action only references Venter Ventures in its allegations as to the second cause of action for the derivative claim for breach of fiduciary duty, stating "Venter has a minority membership interest in Blue Sky owned by Venter Ventures LLC. This cause of action is a derivative claim brought against the individual named Board Members, inclusive and each of them, for breach of fiduciary duty." (Goor Decl., Ex. A at ¶ 110.) This cause of action is not reliant on the MIPA and Venter Ventures has not sought to enforce one provision of the MIPA, while ignoring the other provisions. *BE&K Eng'g Co. v. RockTenn CP*, 2013 WL 5775403 (Del. Ch. Sept. 27, 2013) is similarly inapplicable. Nofar USA ignores that the defendants in that matter "consented and may be bound by the forum selection clause by virtue of its having ***invoked*** the Delaware law agreement." *Id.* (emphasis added). Here, Defendants have not invoked the provisions of the MIPA to assert their claims on behalf of Venter Ventures in the Napa action. In addition, Defendants' other claims are related to "fraud and concealment" and are not related to the MIPA.

Therefore, the Court does not have personal jurisdiction over Venter Ventures and the Venter Family Trust.

**C. <u>The Fraud Claims Are Contemplated in the MIPA's Terms as a Breach</u>**

Nofar USA's argument that "fraud and contract claims will coexist" when a plaintiff alleges false contractual representations misses the mark and ignores the terms of the MIPA. Although a knowingly false contractual representation may separately constitute fraud, here, Nofar USA alleges only misrepresentations for which the MIPA provides contractual remedies. Nofar USA again ignores that the FAC's claim for fraud is based entirely on Defendants' purported refusal to indemnify Nofar USA under the MIPA's indemnification clause (*see,*

*generally,* FAC, ¶¶ 79-87) and the fraudulent inducement claim is based entirely on purported misrepresentations in the MIPA (*id.*, ¶ 104), which are all representations Nofar USA relies on to support its contract claim. (Compare *id.* at ¶ 104 with *id.* at ¶¶ 93-97.) These alleged violations of the representations and warranties in the MIPA are envisioned in the agreement, so any alleged breaches are a part of the MIPA as well.

Nofar USA's argument related to the MIPA's integration clause is also misplaced. In *Prairie Capital III, L.P. v. Double E Holding Corp.*, 132 A.3d 35, 50 (2015), the court held that an "Exclusive Representations Clause" paired with an integration clause "add[ed] up to a clear anti-reliance clause." The "Exclusive Representations Clause" in the agreement stated that the contemplated buyer had the ability to and did conduct an investigation of the "financial condition, operations, assets, liabilities, and properties" of the other contracting party, and with that knowledge was entering the agreement. *Id.* The court stated that this reliance clause "foreclose[d] claims of fraud based on extra-contractual misrepresentations." *Id.* The agreement also had an integration clause. *Id.* The combination of these two clauses was sufficient to disclaim reliance. *Id.* at 51.

The same is true here. The MIPA contains a reliance provision and explicitly allowed Nofar USA to conduct an investigation at any time prior to the Closing Date:

> <u>Effect of Investigation; Reliance.</u> The right to indemnification, recovery of Damages or any other remedy of the Buyer will not be affected under this Agreement with respect to any investigation conducted with respect to, or any knowledge acquired (or capable of being acquired) at any time prior to the Closing Date, with respect to the accuracy or inaccuracy of or compliance with any representation, warranty, covenant or agreement made by the Selling Parties or the Company or any other matter, unless the Selling Party can demonstrate (with written evidence) that the Buyer or the applicable indemnified party had knowledge of, or was aware prior to the Closing Date of such fact (excluding any accounting inaccuracy or discrepancy in the financial statements or books of the Company disclosed by the Buyer) giving rise to the Buyer's Claim.

FAC, Ex. 1 at ¶ 7.5. The MIPA also contains an integration clause:

> Entire Agreement. This Agreement, the schedules and exhibits hereto, the other Transaction Agreements and the Ancillary Agreements contain the entire agreement between the Parties with respect to the subject matter of this Agreement and supersede all prior agreements, understandings, and negotiations, both written and oral, among the parties with respect to the subject matter of this Agreement, including for the avoidance of doubt the Term Sheet dated March 17th, 2021 between the Buyer (or an Affiliate thereof) and the Company.

*Id.* at ¶ 13.4. As in *Prairie Capital III, L.P.*, the combination of these two clauses is sufficient to disclaim reliance, and thus any purported extracontractual representations about the company's financials or performance would contradict the terms of the MIPA. This means that the fraud claims necessarily fail.

### D. **The Fraud Claims Do Seek the Same Damages as Breach**

In addition to the fraud claims being specifically contemplated in the MIPA as a breach of contract, the fraud claims also fail because they request the same damages as the breach of contract claims. Even Nofar USA notes that they can recover in excess of $6 million and its full purported damages if the breach includes "intentional misrepresentations" or the breach is "willful." (Opp. at 8; *see also* FAC, Ex. 1 at ¶ 7.2(a)(vi).) Nofar USA's premise, that "damages for breach of contract claims are capped" (Opp. at 9), is just plain wrong. Nofar USA makes no other argument to distinguish its fraud damages from its breach of contract damages, which are identical and, as pled, unlimited under the MIPA. Ultimately, because Nofar USA seeks nothing more from its fraud claims than it seeks in its breach of contract claim, the fraud claims must be dismissed. *See, e.g., LCT Capital, LLC v. NGL Energy Partners LP*, 249 A.3d 77, 98 ("This measure of damages is identical to the compensation that LCT is entitled to receive for its *quantum meruit* claim, and LCT cannot recover twice for the same loss. Thus, LCT did not assert any independent damages to support the fraud claim, and *quantum meruit* damages will

fully compensate LCT for its loss.”).

### E. <u>The Fraud Claims Are Improperly Pled Under the Standards Set Forth by Fed. R. Civ. P. 9(b)</u>

Again, Nofar USA does not address that the FAC makes no particularized allegations as to Venter Ventures, the Venter Family Trust, and Blue Sky 1007 as required by Fed. R. Civ. P 9(b), but only alleges misrepresentations by Mr. Venter. Nofar USA asserts that “[w]hen a party sues based on a written representation in a contract…it is relatively easy to plead a particularized claim of fraud.” (Opp. at 9.) However, Nofar USA ignores that Venter Ventures and the Venter Family Trust are not parties to the MIPA (*see, generally,* FAC, Ex. 1), and it is unclear from the face of the document whether Barend Venter or Blue Sky 1007, or any of the other parties to the MIPA – namely, Nofar USA, LLC, Blue Sky Utility, LLC, Blue Sky 1007, LLC, Yellow Tree Capital LLC, or Ran Bujanover (*see, id.* at p. 1) – made which representations that are allegedly the basis of the fraud. Because the Defendants have no notice regarding the “what, when, where, and how” of their purported fraud, these claims against the Defendants should be dismissed.

### F. <u>Nofar USA Does Not Allege an Independent Duty for its Negligent Misrepresentation Claim</u>

Nofar USA’s negligent misrepresentation claim fares no better and is based on the same purported misrepresentations as the fraudulent inducement claim. (*See* FAC, ¶ 111 (“Blue Sky’s profitability, tenant consumption levels, indebtedness, and past performance”).) These are all representations contained in the MIPA, and the integration clause paired with the reliance clause makes clear that any alleged misrepresentations outside of the MIPA would contradict its terms. In addition, Nofar USA argues that Mr. Venter had a “pecuniary duty” that is allegedly an “independent duty” from that in the MIPA. (Opp. at 11.) Nofar USA then asserts that the

representations made by Mr. Venter during the negotiation of the MIPA give rise to that pecuniary duty, but again ignores the integrated nature of the MIPA itself and that the integration clause makes clear that the parties had no other duties to one another outside of the agreement.

### G. **The Breach of Contract Claims Fail Because There Are No Misrepresentations in the MIPA**

The FAC fails to allege any misrepresentations in the MIPA, a prerequisite to any purported indemnification obligation. The breach of contract claim is predicated on Defendants' purported refusal to indemnify Nofar USA under the MIPA's terms, which is triggered only following certain misrepresentations or breaches of warranties. (*See, e.g.,* FAC, ¶¶ 92, 98 & p. 22.) Delaware law makes clear that "'[a] mere reference in one agreement to another agreement, without more, does not incorporate the latter agreement into the former by reference.' Rather, '[t]o incorporate one document into another, an explicit manifestation of intent is required.' In addition, 'when incorporated matter is referred to for a specific purpose only, it becomes a part of the contract for that purpose only, and should be treated as irrelevant for all other purposes." *Town of Cheswold v. Central Delaware Business Park*, 188 A.3d 810, 819 (2018). No such explicit integration of the financial models exists in the MIPA, and instead there is only *reference* to the models. As such, the financial models are not part of the MIPA, and accordingly, there is no breach.

### H. **Nofar USA Does Not Properly Plead the Implied Covenant of Good Faith and Fair Dealing**

Nofar USA's argument that "[h]ad the parties to the MIPA expressly addressed the issue, they would have agreed that Venter would not cause BPi – a company he owns and controls – to undertake actions to harm Blue Sky and undermine its value" is sufficient to plead the implied

covenant of good faith and fair dealing is nonsensical. (Opp. at 19.) Nofar USA does not address that the mere impression that certain conduct "***risked*** … breach of the applicable lease agreements … and creating the false impression that Blue Sky does not pay its bills" is insufficient to plead this cause of action. (FAC, ¶ 76.) Nofar USA instead points to an allegation that speaks of a hypothetical situation in which the MIPA would be altered had certain conversations taken place, when in reality, the MIPA disclosed indebtedness to BPi and Mr. Venter's relationship to BPi was explicit. (FAC, Ex. 1 at pp. 6-7; Ex. 2 at 6-7.) In Delaware, "the plaintiff must allege a *specific* implied contractual obligation and allege how the violation of that obligation denied the plaintiff the fruits of the contract." *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 888 (2009) (emphasis added). Nofar USA has not done so here.

## III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss Nofar USA's FAC with prejudice. In the alternative, Defendants request that the action be stayed pending final resolution of the MIPA-related claim in the Napa County action.

Dated: December 2, 2024

*/s/ Laura Davis Jones*

Laura Davis Jones (DE Bar No. 2436)
Peter J. Keane (DE Bar No. 5503)
Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
Phone: (302) 652-4100
Email: ljones@pszjlaw.com
pkeane@pszjlaw.com

-and-

Michael Cypers (*pro hac vice*)
Joseph Leventhal (*pro hac vice*)
Wogai Mohmand (*pro hac vice*)

Glaser Weil Fink Howard Jordan & Shapiro LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, CA 90067
Phone: (310) 553-3000
Email: mcypers@glaserweil.com
jleventhal@glaserweil.com
wmohmand@glaserweil.com

*Attorneys for Defendants Barend Venter, Venter Ventures LLC, Blue Sky 1007 LLC, and The Venter Family Revocable Trust*